463 So.2d 1080 (1985)
Billy D. BARKER
v.
STATE of Mississippi.
No. 55361.
Supreme Court of Mississippi.
February 6, 1985.
*1081 Laurie S. Caldwell, Gulfport, Gerard F. Smith, Biloxi, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Walter L. Turner, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Billy D. Barker was indicted, tried and convicted in the Circuit Court of Harrison County for the rape of T.L.S. and was sentenced to a life term with the Mississippi Department of Corrections. He has appealed to this Court and assigns three (3) errors in the trial below.

I.

THE LOWER COURT ERRED IN FAILING TO SUSTAIN APPELLANT'S MOTION FOR A DIRECTED VERDICT.
Evidence for the State reflects that T.L.S. was sixteen (16) years of age on May 24, 1982. At that time she lived with Dixie and Junior Smith in Gulfport, Mississippi, and expected to graduate from the eighth grade on May 25, 1982. Appellant had been the live-in stepfather of T.L.S. since she was in the seventh grade. At the time, her mother and appellant were living in the State of Missouri and had left her in the custody of Dixie and Junior Smith (no kin).
About 9 a.m. on May 24, 1982, appellant went to the Dixie Smith home and told T.L.S. that he had come to take her back to Missouri, that he had to go to New Orleans that day on business and would come back in the late afternoon and pick her up, and that T.L.S. should have her clothes packed and ready to go. He would not permit T.L.S. to wait until after graduation on the next day.
At approximately 5:00 that afternoon, appellant returned, picked up T.L.S. and stated they were going to News Orleans where they would spend the night before proceeding to Missouri. Appellant was intoxicated and later stopped and purchased more beer. Then he drove to the Deep South Motel in Gulfport, registered for a room with two beds, and took T.L.S. to the room. Upon entering the room, appellant chained the door, took off his shoes and drank a beer.
According to T.L.S., appellant told her to remove her clothes and she declined. He then took off her clothes himself and forced T.L.S. to have sexual intercourse with him. Before the episode ended, he raped her two more times. T.L.S. testified that she screamed, resisted appellant and finally submitted to him when he threatened to kill her, threatened to strike her with a belt in his hand and strangled her. She went to the bathroom, where she stayed until appellant fell asleep. T.L.S. had dressed, except for her tennis shoes, which were near appeallnt, and left the room for the lobby, where she called the Dixie Smith residence with no response. She then went outside the motel where she saw a young woman, Sandy Crowell, to whom she complained about the rape. Ms. Crowell dailed the Dixie Smith residence again, and the residence of Jeff and Charlotte Seymour. T.L.S. talked to Jeff and told him what had happened. Ms. Crowell carrried T.L.S. to the hospital for examination, and the police were called.
Dr. William Tisdale carried out a vaginal examination of T.L.S., found that she had a reddened, irritated entrance to the vagina, a posterior tear back toward the rectum, and a small tear which was still oozing blood. Dead sperm cells were present in her vagina, and he was of the opinion that she had experienced sexual intercourse within an hour or so prior to his examination.
Larry Turner, forensic serologist from the Mississippi State Crime Laboratory, testified that appellant was of blood type A, secreter status, determined from a blood sample taken from Barker. Sperm found on a hotel towel in the room indicated it came from a person who was of blood type A, secreter status.
Joe Edward Andrews, Jr., a forensic scientist at Mississippi State Crime Laboratory, *1082 who was a specialist in hair and fiber identification, examined and combed a blanket, bedspread, towel, and pillow case from the motel room. On the blanket he found head hairs and pubic hairs of Negroid origin and head hairs and pubic hairs of Caucasian origin. From the bedspread, he took hair and hair fragments of Negroid origin, pubic hair of Caucasian origin and hair of Caucasian origin, not identified as to body origin. On the towel he found hairs and fragments of hair of Negroid origin, not identified as to body area, and pubic hair and head hair of Caucasian origin. From the pillow case, he took hair and hair fragments of Negroid origin and head hairs of Caucasian origin.
Appellant testified that after he picked up T.L.S. at 5 p.m., he drove to the Deep South Motel, registered and took T.L.S. to the room because he was tired; that T.L.S. did not want to go to Missouri and told him that she would claim rape,[1] if he made her go; that he became upset and went to a lounge where he drank and played cards until 8:00 the next morning; that he didn't go back to the motel room but drove to the Dixie Smith residence; that he learned T.L.S. was at the police station, and he drove near the station, stopped and looked around but did not go in; and that he went back to Missouri where he was extradited two months later. He denied that he raped T.L.S.
Although the uncorroborated testimony of the prosecutrix in a rape case should be examined closely, Goss v. State, 413 So.2d 1033 (Miss. 1982), it is well-established law that such uncorroborated testimony is sufficient to sustain a rape conviction. Davis v. State, 406 So.2d 795 (Miss. 1981); Goode v. State, 245 Miss. 391, 146 So.2d 74 (1962). The testimony of the prosecutrix here is corroborated by physical facts and by testimony of the examining physician and the forensic serologist.
In passing upon a motion for directed verdict or peremptory instruction, courts must assume that all evidence for the State is true and that all reasonable inferences that may be drawn from the evidence are true and, if from all the testimony there is enough in the record to support a verdict, the motion should be overruled. Warn v. State, 349 So.2d 1055 (Miss. 1977); Rich v. State, 322 So.2d 468 (Miss. 1975); Roberson v. State, 257 So.2d 505 (Miss. 1972).
We are of the opinion that the evidence in the case sub judice presented a guilt issue for the jury and that the lower court correctly overruled the motion for directed verdict.

II.

THE LOWER COURT ERRED IN DECLINING TO SUSTAIN APPELLANT'S MOTION FOR NEW TRIAL BASED ON THE MISCONDUCT OF A JUROR.
The jury panel was presented form cards upon which were enumerated certain background questions. The card of juror Mrs. Dell Alfonso is not a part of the record, and we are unable to discern exactly what the form of the questions were and the specific answers given. However, it was stipulated by the attorneys that she gave incorrect information on the card. One of the questions appearing there was whether the juror had ever been an accused, complainant or witness in a criminal case, and this juror answered in the negative. It later was developed that she had been arrested for DUI and carrying a concealed weapon. She appealed the concealed weapon charge to the county court, where she entered a plea of guilty, was fined $261.00 and placed on six-months probation, after which the charges were to be dismissed. The weapon was ordered returned to her.
Appellant contends that had he known the above information, he would have challenged the juror and that he still had some peremptory challenges left. On the other hand, the State argues that, if there was any prejudice resulting from the juror, it would be to the State, on account of the *1083 prosecution of the juror on the mentioned charges. In Dorrough v. State, 437 So.2d 35, 36 (Miss. 1983):
For resolution of this question, our decision in Odom v. State, 355 So.2d 1381 (Miss. 1978) presents our guideline. Where a prospective juror in a criminal case fails to respond to a question by defense counsel on voir dire, the Court should determine whether the question was (1) relevant to the voir dire examination, (2) whether it was unambiguous, and (3) whether the juror had substantial knowledge of the information sought to be elicited. If all answers to the above questions are affirmative, then the court determines if prejudice to the defendant in selecting the jury could be inferred from juror's failure to respond. This test has been applied in Laney v. State, 421 So.2d 1216 (Miss. 1982); Atkinson v. State, 371 So.2d 869 (Miss. 1979); Dase v. State, 356 So.2d 1179 (Miss. 1978); Brooks v. State, 360 So.2d 704 (Miss. 1978).
The lower court determined that no prejudice resulted to the appellant. We have carefully examined the voir dire of the lower court in qualifying the jurors and we are satisfied that the juror was properly qualified and that the lower court committed no reversible error in declining to grant a new trial on this ground.

III.

THE LOWER COURT ERRED IN ADMITTING HEARSAY TESTIMONY FROM PROSECUTING WITNESSES CONCERNING DETAILS OF THE ALLEGED RAPE.
The objectionable testimony of Sandy Crowell follows:
Q. Okay. Describe in your own words, how you came in contact with [T.L.S.]?
A. Well, I had car trouble that day and I was pretty well ticked off, and I was going down to the phone, the public phone that they had near the office of the trailer park, and I was walking down the road, and this little girl came up just in hysteria, screaming, and she was saying something about her step-father, and she was saying rape and I thought she was saying wreck, and she asked me where can I find a phone, and I took her to the two public phones there, and she asked me to dial a number for her which was the number for Dixie.
BY MS. CALDWELL: Your Honor, I'm going to object to this hearsay.
BY THE COURT: Overruled.
Q. Go ahead.
A. She asked me to dial a number which belonged to someone named Dixie, and there was no answer. She gave me another number for a couple by the name of Seymour. There was an answer, and she told them she had been raped by her step-father, and she gave them my address to come and pick her up.
BY MR. SMITH: Your Honor, respectfully, what we have here is a woman telling us what somebody told her.
BY THE COURT: There is an exception to the rule. Overruled.
Numerous decisions in this state provide that evidence of the prosecutrix's complaint must be confined to the bare fact that a complaint was made and details or particulars of the complaint are not admissible as substantive testimony to bolster the testimony of the prosecutrix against the accused. Carr v. State, 208 So.2d 886 (Miss. 1968). The rule has been modified in order to permit the prosecutrix to identify the time and place with that of the one charged.
In the case sub judice, 16-year-old T.L.S. had been through a harrowing experience. When appellant dropped off to sleep, she left the motel room seeking aid and when she saw Sandy Crowell, at that time being in a state of hysteria, she incoherently attempted to tell Ms. Crowell what had occurred. Only when T.L.S. told her friend over the telephone that her stepfather had raped her did Ms. Crowell understand what had occurred. We think it is not necessary to determine whether or not the T.L.S. statement was a part of the res gestae. T.L.S. testified prior to Sandy Crowell and *1084 told all the details of the sordid affair. After such testimony, she described her meeting with Sandy Crowell as follows:
Q. What did you do then?
A. I ran, there was a trailer park next to it, San Beach Trailer Park, and there was a girl walking down the street, and I ran up to her and I asked her to help me.
Q. Did you know her?
A. No, ma'am. She asked me what was wrong, and I told her. She took me to the phone booth, and asked me if there was a number I could call, that she'd call for me. I gave her Dixie and Junior's phone number, but they wasn't home. Then she called Jeff and Charlotte, and Jeff answered ther phone. She let me talk, and I told him what happened, and he said he was on his way. She took me to her trailer to stay there until she called her lawyer to see what she was supposed to do.
As noted above, T.L.S. said "I told him what happened." This relates back to everything about which she had testified just previously. That testimony was competent and was not objected to.
In Boyd v. State, 239 Miss. 589, 123 So.2d 857 (1960), a similar question was presented to the Court. The Court said:
The appellant next assigns as error the action of the trial court in overruling appellant's objection made to the testimony of the witness Lambert as to an accusatory statement made by prosecutrix shortly after the alleged crime was committed. We have carefully considered this assignment in the light of the entire record and we are all of the opinion that this was not error. Moreover, if it was error, we are confident that it did not prejudice the appellant.
239 Miss. at 591, 123 So.2d at 857.
Likewise, we have carefully considered this assignment in light of the entire record, and we are of the opinion that, if the testimony was error, it did not prejudice the appellant and was harmless.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] T.L.S. denied she made the statement.