BRIDGES, J.,
for the Court:
¶ 1. This appeal arises out of Johnny James Colton’s conviction of rape in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Colton was indicted for the crimes of forcible rape and robbery by exhibiting a deadly weapon. Following a jury trial, Honorable W. Swan Yerger directed a verdict in favor of Col-ton on the armed robbery charge because of the State’s failure to prove the elements of the crime. Believing there to be enough evidence to make a prima facie case for rape, however, the trial judge denied Colton’s motion for a directed verdict on the rape charge. Colton was found guilty of rape and sentenced to life imprisonment.
¶ 2. Colton cites only one issue on this appeal:
Whether the jury’s verdict was contrary to established principles of law and was against the overwhelming weight of the evidence presented at trial.
FACTS
¶ 3. The rape victim at the time of this incident, was a twenty-two year old mother *780 of a thre&-year old daughter and a nursing student at Hinds Community College. The victim identified Colton as the man who forced his way inside her apartment and raped her on January 18, 1996. The facts submitted by the victim, and found to be credible by the jury, are as follows:
¶ 4. On January 18, 1996, Colton was employed at Herrin-Gear Chevrolet in Jackson, Mississippi. A punched time card with Colton’s name on it suggests that Colton clocked in to work that morning at 7:22 a.m. These facts are not disputed by the victim or the State. The victim testified, however, that around 8:15 a.m., a man in a uniform, who she later identified as Colton, appeared at her door claiming to be the new maintenance man for her apartment building. According to the victim, Colton even named the manager of the apartments. When she became suspicious of her visitor, the victim attempted to close the door, but upon doing so, Colton pushed the door open and forced himself inside the victim’s apartment. The victim’s daughter was standing in the living room when Colton entered the apartment.
¶ 5. Colton told the victim to take her clothes off and go lie down in the bedroom. The victim refused at first, until Colton displayed a gun and held it to her daughter’s head, telling her he would kill the little girl if the victim did not comply. The victim did as Colton told her and went in the bedroom, took off her clothes and lay on the bed. The victim testified that Col-ton then locked her little girl in the bathroom, held a gun to the victim’s head and began to rape her. Colton told the victim to put her hands over her eyes while he performed these acts on her. The victim testified that, while Colton had a difficult time becoming erect, she was certain that he still managed to force his penis inside her vagina. She also testified that she felt a wet substance on her vaginal area during the ordeal.
¶ 6. The victim then testified that, after Colton had his way with her, he ordered her to go to the bathroom, run some water into the bathtub and wash her private areas, in hopes of erasing any evidence of his crime. The victim stated that she complied with Colton’s orders while her little girl stood by and, after she was done washing herself, Colton left her apartment. The victim asserts that, on his way out, Colton took some brand new clothes (still in the bag) and her purse and its contents, all of which was sitting on a chair in another room of her apartment. The victim testified that her purse contained a small amount of money and a ring with a purple stone that her boyfriend had given her.
¶ 7. The armed robbery charge against Colton was dismissed by the trial judge because he ruled that the elements of the crime had not been met, in that, Colton did not take the victim’s personal property from her person or technically, while in her presence. However, after a trial by jury, rich with scientific and DNA evidence preventing Colton from being excluded as a suspect in this rape, as well as many other points of proof, Colton was found guilty of rape and sentenced to life in prison.
¶ 8. Colton argues that the State put on inadequate proof that he committed rape on the victim, stating that he was at work at the time she was raped and that the time card which he punched at 7:22 a.m. on January 18, 1996, was positive proof of his innocence. Further, Colton contends that a ring with a purple stone that he gave his girlfriend for Valentine’s Day, which the victim identified as her stolen ring, was in fact purchased by him at a pawn shop. Therefore, Colton asserts that the State did not meet its burden in proving his guilt *781 in this crime beyond a reasonable doubt. He argues that the scientific data which made him a suspect in the victim’s rape was flawed and that mistakes were made in the laboratory. Colton adamantly denies any wrongdoing and claims to have been at his job until he clocked out for lunch around 1:00 p.m. that day, making it impossible for him to be in the victim’s apartment.
STANDARD OF REVIEW
¶ 9. In Brown v. State, this Court held that:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
Brown v. State, 751 So.2d 1155(¶ 7) (Miss.Ct.App.1999). See also Cross v. State, 759 So.2d 354, 356 (Miss.1999); Rice v. State, 723 So.2d 1239, 1243 (Miss.App.1998); Eakes v. State, 665 So.2d 852, 872 (Miss.1995). All matters regarding the weight and credibility of the evidence are to be resolved by the jury. Id. See also Pleasant v. State, 701 So.2d 799, 802 (Miss.1997).
If there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
Benson v. State, 551 So.2d 188, 193 (Miss.1989).
¶ 10. Our standard of review on motions for a directed verdict, which test the legal sufficiency of the evidence, is much the same as our review of the weight of the evidence stated above. We must look to each element of the offense and consider all of the evidence presented, not just the evidence which supports the prosecution’s ease. Gleeton v. State, 716 So.2d 1083, 1087 (Miss.1998); Franklin v. State, 676 So.2d 287, 288 (Miss.1996); Wetz v. State, 503 So.2d 803, 808 (Miss.1987). This proof should be reviewed in the light most favorable to the verdict. Id. Any credible evidence which is consistent with the guilty verdict must be accepted as true. Id. Furthermore, we must give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id.
LEGAL ANALYSIS
¶ 11. We find that the jury’s decision to convict Colton of the rape of The victim was not against the overwhelming weight of the evidence. This Court is convinced that enough proof was presented in the record to show us that a reasonable juror could find that Colton was guilty of the crime. As such, we may not overturn the jury’s verdict here. Benson, 551 So.2d at 193. The evidence presented by the State in this case was found to be credible by the jury. That determination is not one with which we can interfere, short of an abuse of discretion by the court or the presence of an unconscionable injustice. Neither of those scenarios appears in this case.
¶ 12. Colton complains that the State did not prove that he was at the victim’s apartment on January 18, 1996, nor that he raped her. The fact of the matter is that the victim’s testimony alone is enough to convict Colton. Cross, 759 So.2d at 356; Barker v. State, 463 So.2d *782 1080, 1082 (Miss.1985). In Barker, the court ruled that “[although the uncorroborated testimony of the prosecutrix in a rape case should be examined closely, it is well-established law that such uncorroborated testimony is sufficient to sustain a rape conviction.” Barker, 463 So.2d at 1082.
¶ 13. In the instant case, there was the added advantage that the victim’s testimony was, in fact, corroborated with physical evidence. Colton did not discredit this physical evidence with enough force to convince the jury that there were fatal mistakes in the blood and DNA testing in this case. Experts took the stand at trial to discuss the fact that Colton is in the very small percentile of African American males whose DNA is consistent with that of the victim’s rapist. This was found to be the case after DNA specialists compared samples of semen found in the victim’s vaginal wall shortly after the rape took place with samples taken from Col-ton. While the test results were not enough to rule out everyone other than Colton specifically, they were enough to sway the jury that Colton was guilty and these tests, coupled with the victim’s testimony, are enough for this Court to find that there was sufficient evidence for the jury to convict Colton.
¶ 14. The victim identified Colton out of a group of African American men, all with virtually the same characteristics. The victim testified that she was absolutely certain that Colton was the man who threatened she and her daughter, held a gun to her and her daughter’s head and finally raped her. Colton’s assertion that he was at work that morning could not be conclusively verified. Testimony revealed that Colton ran errands for Herrin-Gear on a regular basis and that he was under no strict time schedule when running those errands. Although it was Colton’s frequent practice to tell his supervisor when he would be leaving on an errand, Colton’s supervisor testified that, on that particular morning, he was not yet in the office at the time Colton was accused by the victim of forcing his way in her apartment and raping her.
¶ IS. As to the purple stone ring, which is claimed by Colton to be the ring he gave his girlfriend but was later offered into evidence as proof of Colton’s presence in the victim’s apartment that day, the jury evidently was not convinced that Colton happened to buy a ring at a pawn shop identical to the one owned by the victim and stolen from her on the same day that she was raped by a man whom she later positively identified as Colton. Colton did produce a receipt at trial from a pawn shop for a ring with a purple stone fitting a similar description to the one stolen from the victim. However, Letha Taylor, the woman that the pawn shop owner verified to be the person who pawned the same ring that was subsequently purchased by Colton, could clearly not identify the ring, formerly worn by Colton’s girlfriend and seized by the police, as the same ring she pawned. On the other hand, the victim had no problems identifying the ring in police custody and worn by Colton’s girlfriend as the purple stone ring that was once hers, and was stolen from her on the day she was raped. The jury found the victim’s testimony credible and apparently was not convinced by Colton’s rebuttal of this evidence.
¶ 16. This Court is not sitting in a fact finder position and therefore is not required to make a decision as to whether the State met its heavy burden to prove Colton guilty beyond a reasonable doubt at the trial. However, it is our job to review whether the jury could have found that Colton was guilty based on all of the evidence produced at trial and transcribed in *783 the record of this case. We are convinced a reasonable jury could find Colton guilty of the rape of the victim. As such, we must affirm Colton’s conviction and sentence in this case.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY OF CONVICTION OF RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.