877 So.2d 503 (2004)
Clint Trace HUNT a/k/a Clint Hunt a/k/a Clinton Trace Hunt, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-CA-01302-COA.
Court of Appeals of Mississippi.
January 6, 2004.
Rehearing Denied March 2, 2004.
Certiorari Denied July 12, 2004.
*505 Chester D. Nicholson, Gail D. Nicholson, Gulfport, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before SOUTHWICK, P.J., MYERS and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Clint Hunt appeals from the denial of his request for a new trial. In 1995 Hunt was convicted of rape. In 2001, he filed for post-conviction relief based on newly discovered evidence. His evidence was from a previously unknown witness who testified at his 2002 hearing that she had been a close friend of the victim.
¶ 2. The new witness stated that she and the victim would during the time period at issue frequently go to various bars and clubs to socialize. She had been with the victim at a bar at about the date of the claimed rape. The victim pointed out a man who looked like Hunt as someone whom she wanted to meet. She went up to the man and started a conversation. The new witness also stated that later the *506 victim knew Hunt's name, details about his background, and where his mother lived and worked. At the trial, the victim had denied ever going to bars, as she was engaged and was soon to be married. She testified that Hunt, whom she claimed never to have seen before, had forced his way into her apartment.
¶ 3. This newly discovered evidence supported in significant ways the claim that Hunt made at his first trial that he had met the victim at a bar and later that evening had consensual sex with her. It even reveals a possible motive for a fabrication, which is that the new witness saw a man leaving the victim's apartment. That unexpected event may have caused the charge of rape immediately to be made to prevent the victim's fiancé from learning of consensual sexual activity with another man. According to the new witness, the victim did not appear agitated by the rape that she claimed had just happened. The new witness also stated that the victim did not report the rape at that time, but waited about a week before doing so.
¶ 4. A prior relationship and a possible motive for lying certainly may prove incorrect. However, the evidence at the initial trial was strictly a battle of credibility between Hunt and the prosecuting witness. Since the new evidence provides substantial support for Hunt's explanation of events, we find that he is entitled to have his conviction set aside and be given a new trial.

ORIGINAL APPEAL
¶ 5. Almost six years ago, we reviewed Hunt's conviction on direct appeal and found no reversible error. Hunt v. State, 706 So.2d 262 (table), 95-KA-00889 (Miss.Ct.App. Jan. 27, 1998) (McMillin, P.J., for panel of King and Payne, JJ.). In order to put the present appeal in context, we reproduce here the statement of facts from that opinion and also our 1998 review of an issue that is central to this argument concerning newly discovered evidence.
¶ 6. [1998 opinion.] Clint Trace Hunt has appealed his conviction of rape returned by a jury in the Circuit Court of Forrest County. He raises four issues in this appeal, three of which attack the finding of guilt and one attacking the sentence as being unduly severe. We find none of these issues to have merit. We, therefore, affirm the conviction and judgment of sentence.

Facts
¶ 7. The State's proof indicated that Hunt came to his victim's apartment in Hattiesburg in the early morning hours [of December 16, 1993], and knocked on her door, claiming he was trying to find a friend who resided at the complex. After using several subterfuges in an attempt to be voluntarily admitted to the apartment, Hunt finally forced his way in and raped his victim. Scientific evidence was presented by the State that linked DNA material found on the victim's clothing to Hunt with a match testified to be one in five hundred million.
¶ 8. Hunt, testifying in his defense, claimed that the sexual encounter had, in fact, occurred two days earlier when the two had met in a local bar and had engaged in consensual intercourse in his vehicle. He claimed that he knew the prosecuting witness only by a fictitious first name she had used during their encounter, and that he had picked her up from the apartment parking lot on instructions she gave him before she left the bar. He claimed never to have been in the victim's apartment or even to have seen the woman before or after their encounter in the bar.
¶ 9. The jury returned a verdict of guilty but declined the opportunity to set Hunt's sentence at life. The trial court set the *507 sentence at forty-five years, and because Hunt was also adjudicated to be a habitual offender under section 99-19-81 of the Mississippi Code of 1972, the judgment ordered the sentence to be served without the possibility of parole.
¶ 10. [We omit our discussion of issues concerning a pretrial lineup, a jury instruction, and the severity of the punishment.]
¶ 11. Hunt's third issue attacks the weight of the evidence supporting his conviction. The thrust of his argument is that his version of the events was more credible than the one related by the victim. Such matters are left to the jury, as the trier of the facts, to resolve. On appeal, we must view the evidence in the light consistent with the verdict of guilt. Strong v. State, 600 So.2d 199, 204 (Miss.1992). Only if we are convinced that a manifest injustice has occurred, are we authorized to reverse. Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993).
¶ 12. The jurors heard both versions, and by their verdict, indicated that they accepted as true the version related by the victim. Her story was neither incredible, improbable, nor substantially impeached. The victim's testimony, standing alone, is enough to sustain a conviction of rape. Barker v. State, 463 So.2d 1080, 1082 (Miss.1985). This issue is without merit.
[End of 1998 opinion]
¶ 13. We affirmed in 1998 as to the weight of evidence, since we found that the jury was entitled to choose the victim's version of events over that offered by Hunt. If the new evidence makes a potentially significant shift in favor of Hunt in the relative plausibility of each explanation of what occurred, then the evidence may require a new trial.
¶ 14. Since we affirmed the conviction on direct appeal, Hunt needed to seek leave from the Supreme Court prior to filing for post-conviction relief. Miss.Code Ann. § 99-39-7 (Supp.2003). He filed and such leave was granted by the Supreme Court on April 25, 2001.

NEW EVIDENCE
¶ 15. Hunt offered newly discovered evidence which he claims establishes that no crime was committed. This evidence is in the form of testimony at the post-conviction relief hearing or affidavits of Sabrina Pitts, Norma Morgan, and Joy Martinolich. None of these individuals testified at Hunt's 1995 trial. The victim did not appear at the hearing, and there was a statement from the prosecution that she could not be found.
¶ 16. We will refer to the person who charged Hunt with rape as the "victim," and we will not name her in the opinion. A jury determined that she was a rape victim and that conclusion was affirmed on appeal. Unless later court action overturns the conclusion, she is entitled neither to have her name made public in a court opinion nor to have her characterization as a victim removed.

Sabrina Pitts
¶ 17. Sabrina Pitts was the most significant newly discovered witness.
¶ 18. Both the victim and her husband (married after the events involved in Hunt's prosecution) mentioned Pitts during their testimony at the original trial. The victim was asked on cross-examination whether anyone else lived in the apartment. The response was to name Pitts as someone who would visit her apartment, would try to get her to go places with her, but "I always tried to get rid of her because she was really not my type of person to be hanging around." The man whom the victim had married by the time of trial was also asked about Pitts. He described her as a "loner" who was searching for *508 someone "she could bond with." There was no suggestion by either witness that Pitts and the victim were particular friends or had socialized together. Instead, both were dismissive of her as a person and as an acquaintance. When Pitts was first interviewed years later, she told a much different story.
¶ 19. Pitts had first been interviewed in May 1999, when a private investigator hired by Hunt's family contacted her. A transcript of the interview appears as part of the record as does an affidavit that Pitts signed after the interview.
¶ 20. Pitts at the 2002 hearing on whether a new trial should be ordered discussed events involving her and the victim that occurred in December 1993. She stated that she and the victim had known each other for about two years, were best friends, had daily contact, and had frequented Hattiesburg bars together practically every weekend. Her testimony apparently included an assertion that Pitts had dated the brother of the victim's fiancé. Certainly this testimony describes a much different relationship between Pitts and the victim than that described at the trial.
¶ 21. The details that Pitts related of the social activities were also much different than had been suggested by the victim and her husband at the 1995 trial. Pitts said that she and the victim went to two taverns, Senor Frogs and Ropers, almost every weekend. Pitts began to describe an encounter that her friend had at one of the bars with a man, but the trial judge ruled the testimony inadmissible unless Pitts could positively identify the person as Hunt. She apparently could not do so at the 2002 hearing, though the transcript is somewhat unclear.
¶ 22. Also included in the record is a transcript of the 1999 interview with Pitts conducted by a private investigator. At that time Pitts stated that the victim had definitely met Hunt at the Ropers Bar in Hattiesburg before the alleged rape occurred. The victim saw Hunt across the room and walked over to talk with him. The victim later told Pitts that she wished to stay behind at the bar because she and the man had plans. Pitts left without her. This is consistent with Hunt's testimony that the same night he met the victim they had consensual sexual intercourse.
¶ 23. The next night the two women were to go to a party. The victim got dressed for it but then received a telephone call and decided not to go with Pitts. When Pitts went back to the apartment later that night after having attended the party, she saw a man leave out the back door and run through the woods. She could not recognize the person but felt confident it was not her friend's fiancé. Pitts was told by the other woman that she had just been raped. The trial judge refused to allow this matter to be explored, saying that it was hearsay. Examining the 1999 transcript in which this issue was examined, we find that Pitts said she immediately accused the purported victim of lying and of attempting to deflect suspicion from herself for having engaged in consensual sexual activity with someone besides her fiancé. Pitts encouraged her friend to call the police or go to the hospital if she had been raped. Pitts said that the victim refused and revealed no emotion but acted normally. Pitts stated in 2002 that she had daily contact with her friend for about a week before the woman went to a hospital and reported being raped. In 1999, Pitts said that the time between the events involving Hunt and the report of a rape was only three days.
¶ 24. This story of a man being seen leaving the victim's apartment does not mirror Hunt's testimony. Hunt testified that he had consensual intercourse with *509 the victim in his automobile and had never been to the victim's apartment. Whether the person in the apartment existed but was someone other than Hunt, or whether there is some other explanation, is one of the matters that was not fully developed.
¶ 25. Pitts also testified at the hearing that the victim knew Hunt's name, related details about Hunt's mother and where she worked, and knew that Hunt had a criminal history. The indictment for rape indicated that Hunt had been convicted in Mississippi of grand larceny in 1989 and of aggravated burglary in Tennessee in 1991. Pitts did not indicate at the hearing when her friend related this information, but if Pitts claimed that the purported rape victim knew all of this about Hunt before he was identified and arrested, then this would be very important information.
¶ 26. The dissent makes a close reading of these materials, finds inconsistencies in an affidavit submitted by Pitts and the testimony at trial, and also finds fault with the industriousness of Hunt's original counsel. We discuss the issue of reasonable diligence later. Here, on the question of the substance of Pitts' testimony, we conclude that there was no fatal variance. The trial judge did not conclude that Pitts' testimony should be discounted because of inconsistencies. The statements that she made at different times all supported a prior familiarity of the victim with Hunt, one that would explain a relationship between the two and corroborate Hunt's story. Pitts was never asked to explain the variations in her testimony, as no party made them an issue at the hearing.
¶ 27. The possible inconsistencies would not affect the admissibility of this evidence; those variations also do not detract from the central story consistent with Hunt's version of events that is told in all her statements.

Joy Martinolich
¶ 28. Another new witness was Joy Martinolich. In 1993 she was a social worker at Forrest General Hospital when she interviewed the victim in the emergency room.
¶ 29. Hunt's detective obtained an affidavit from Martinolich prior to the 2002 hearing. She stated that she reviewed her notes prior to the giving of the affidavit. She specifically remembered her interview with this young woman who claimed to have been raped by Hunt. Martinolich stated that as a social worker in a college town, she had seen many young females claiming to have been sexually assaulted. The one thing that she remembered about this person was a lack of "hysteria," either verbally or expressed as body language. She further stated that she was not contacted by anyone concerning this case nor was she called as a witness in the trial. Martinolich stated in the affidavit that if she had been called to testify, she would have testified that in her opinion this young woman did not appear to be someone who had recently been sexually assaulted.
¶ 30. Martinolich failed to appear at the hearing, and the information just related is from the affidavit that she had earlier provided. The defense proffered the affidavit, but the trial court refused to have it marked even for identification. A copy of the affidavit was attached to the defense motion for a new trial, and thus it is in the record in that form.

Norma Morgan
¶ 31. Norma Morgan formerly worked as a Mississippi Department of Corrections probation officer. She had retired by the time of the 2002 hearing. In July 1995, Morgan conducted the pre-sentence investigation report for Hunt. In an affidavit dated October 6, 1999, Morgan stated, "It is my personal opinion that she was not *510 truthful with me" when referring to the victim and the 1995 pre-sentence report. This affidavit was obtained by a private detective hired by Hunt's family.
¶ 32. At the hearing on Hunt's motion for post-conviction relief, Morgan testified that she felt the victim had been lying. The judge pointed out that the pre-sentence report that Morgan made did not contain such an assertion. Morgan told the judge that she did not believe it was her right to state such an opinion in the report. This witness was not newly discovered, but she did have an opinion that had not previously been offered.
¶ 33. The court sustained a hearsay objection to much of what Pitts was asked at the hearing. The remainder of the new evidence was not found compelling. The request for post-conviction relief was denied. Hunt has appealed.

DISCUSSION
¶ 34. In order to warrant granting a new trial because of newly discovered evidence, it must be shown that the evidence (1) will probably change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material to the issue, and (5) is not merely cumulative, or impeaching. Moore v. State, 508 So.2d 666, 668 (Miss.1987). When reviewing a trial court's denial of a motion for post-conviction relief, an appellate court will reverse only where the decision of the trial court was clearly erroneous or an abuse of discretion. Williams v. State, 669 So.2d 44, 53 (Miss.1996).
¶ 35. We consider each of these factors.

1. Likely change in outcome if a new trial is granted
¶ 36. We summarize the character of the new evidence. A witness indicated that she and the victim had gone to a bar at about the time of the alleged rape. Socializing at Hattiesburg bars was a frequent occurrence for the two of them during this period. A few days before the claimed rape, the victim indicated an interest in a young man at the bar who looked very much like Hunt. The firmness of the identification varied from a 1999 statement and that given at the 2002 hearing. The witness was to go to a party with the victim the next night, but that plan was canceled at the last minute after the victim received a phone call. Later, after the party that the witness attended without the victim, she returned to the victim's apartment and saw a man quickly leaving the apartment. The victim did not seem upset, but claimed calmly that she had been raped. The witness did not believe her, but told the victim that she was making up the charge because she had been discovered in her apartment with a man other than her fiancé. It was a week later before the victim reported a rape, and at that time, the victim claimed that the rape happened on the day of the report.
¶ 37. There was testimony from a social worker whose job was to work with rape victims, that this victim did not appear to be telling the truth. In addition, the woman who prepared the presentence report for Hunt's case in 1995 found the victim unbelievable.
¶ 38. There are two initial questions. What if any part of this new evidence would be admissible in a trial? Next, would the admissible evidence likely change the result?
¶ 39. Some of the new evidence suggests that the purported victim had consensually engaged in sex with Hunt; other evidence concerned her frequenting of bars. A rule of evidence prohibits most reputation and opinion evidence concerning *511 a rape complainant's prior sexual behavior. M.R.E. 412. We consider this rape shield law in deciding whether the new evidence regarding the victim's conduct would be admissible. If Pitts' 1999 positive identification of Hunt as the man in the bar in whom the victim was interested in meeting was offered at a trial, this is direct evidence in support of the first part of Hunt's version of events. If instead, Pitts testified as she did in 2002 with a seeming lack of certitude that it was Hunt, this testimony is still circumstantial evidence supporting Hunt's explanation. Pitts at least stated that it was someone who looked much like Hunt and that the victim stayed behind at the bar with the man. Relevant evidence is that which makes more likely the existence of a fact that is of consequence to the proceedings. M.R.E. 401. Either certitude or likelihood would be relevant, though the positive identification would be weightier.
¶ 40. Hunt claimed that he and the victim met at a bar, and the victim had a one-night, consensual sexual encounter with him. Circumstantial evidence is evidence which, without going directly to prove that a fact actually does exists, gives rise to a logical inference that such a fact does exist. Keys v. State, 478 So.2d 266, 268 (Miss.1985).
¶ 41. The evidentiary rule prevents "reputation or opinion evidence of the past sexual behavior of an alleged victim" from being introduced. M.R.E. 412(a). It also prevents evidence of prior consensual relations with the accused, unless that evidence is to show prior relations between the parties in order to support a claim of consent. M.R.E. 412(b)(2)(A). This testimony at least is of prior relations between the parties. From Hunt's perspective, it is evidence of the actual event that the victim claimed was nonconsensual. Hunt's version of events is that he was not with the victim at the time of the claimed rape, but his one-time encounter with her was several days earlier.
¶ 42. Even though Pitts could not state that she saw Hunt or the man who looked like him having sexual relations, what she did view corroborates Hunt's story in important particulars.
¶ 43. In addition to corroboration, some of the evidence also would have been impeachment. We discuss below the rule that evidence that is "merely impeachment" is not a basis for a new trial. An example of impeachment evidence is the following. The trial court at the hearing for a new trial determined that anything the victim said to Pitts regarding a rape was hearsay. That was correct but incomplete. The defense was entitled to cross-examine the victim on whether prior to the date that she told authorities that she had been raped, she had told Pitts of a rape at her apartment. Such questioning would have been proper impeachment by use of a prior inconsistent statement. M.R.E. 613(a). There is sufficient inconsistency to justify its use, since there never has been any suggestion that different people raped the victim on different days all during the same week. The victim would be given an opportunity to admit or deny ever having made the statement. If she denied making it, then the statement could have been introduced. M.R.E. 613(b).
¶ 44. Though "merely impeachment" evidence will not justify a new trial, there is other evidence that was not mere impeachment on which a determination could be made of whether a new trial was warranted. If there is substantial evidence that conforms to the test for what is newly discovered, a trial judge in exercising his discretion in whether to order a new trial may let other new but not legally newly discovered evidence inform his decision *512 on whether an injustice may have been done.
¶ 45. More problematic is the testimony that the victim would frequent bars and would express interest in having relations with other men. Rule 412 would likely prevent evidence of her "sexual behavior" with other men, even if the behavior witnessed by Pitts was largely flirtatious and not more direct evidence of sexual acts. M.R.E. 412. The testimony that Pitts and the victim frequented bars together during this period is at least impeachment of the victim's explanation of events. It would not independently be a basis for ordering a new trial.
¶ 46. Pitts also stated that, on more than one occasion, she had reminded her friend that she would not support or condone her flirtatious behavior while knowing she was engaged to a man whom Pitts said that she liked. Hunt alleged that after consensual sex, the victim began to act "kind of paranoid, kind of strange." Hunt also stated that she initially told him her name was "Tricia" and that she would not give him her telephone number or give him permission to get in contact with her. Whether a trial judge might find some of this additional testimony to be sufficient corroboration of Hunt's version of events to be relevant and admissible we need not decide, other than to note such evidence must be handled carefully to avoid violating Rule 412 regarding prior sexual behavior with individuals other than the accused. What the testimony provides is further corroboration that Hunt met the victim at a bar, since the victim's story at the original trial was that she did not engage in such socializing.
¶ 47. The testimony from Joy Martinolich, the hospital social worker, was that she did not believe the victim's claim of rape. Such evidence would likely be offered as expert testimony regarding the manner in which rape victims usually act. In one precedent, this Court held that a psychometrist and licensed counselor could testify regarding children who claimed to have been sexually abused. T.K. ex rel. D.K. v. Simpson County Sch. Dist., 846 So.2d 312, 318-19 (Miss.Ct.App.2003). He had seen over 2800 children who had been sexually abused. He also had testified in numerous trials regarding child sexual abuse. We found that there was no error in accepting the witness "as an expert in the area pertaining to exhibited characteristics of sexually abused children." Id.
¶ 48. The Supreme Court has held that an emergency room doctor, if properly shown to have the expertise, may testify that the physical injuries that alleged sexual assault victims had suffered were consistent with the sexual acts that the individuals claimed had been done to them. Simmons v. State, 722 So.2d 666, 669, 673 (Miss.1998).
¶ 49. Therefore, if the witness were shown to be qualified, her testimony regarding how this victim's conduct differed from that of other rape victims who were suffering the trauma of a recent rape, would have been admissible.
¶ 50. The woman who prepared the presentence report, Norma Morgan, and who did not believe that the victim was telling the truth, would perhaps also be offered as expert opinion. We are less confident of whether investigators such as this would be considered to have expertise on whether the victim was truthful. Regardless, if her testimony were offered, the trial court could examine the issue based on whatever foundation was offered.
¶ 51. Substantial parts of what was offered at the hearing for a new trial would be admissible evidence. The next question is whether it would likely alter the outcome. That is a quite subjective *513 decision. Yet as we pointed out in our excerpt from this Court's 1998 affirmance of Hunt's conviction on direct appeal, the case was almost entirely a question of credibility. Pitts' testimony that Hunt or someone who looked much like him and the victim had met at a bar the day prior to the rape, that the victim expressed interest in him to Pitts and then talked to him, and then the details of some sort of furtive departure of a man from her apartment a few days or a week before the claim of rape, substantially support Hunt's testimony. Some of the evidence also impeaches the victim's testimony, but the important matter for our purposes is that it corroborates Hunt's version.
¶ 52. The decision is subjective, but we conclude that this evidence rises to the level of that which is sufficiently likely to cause a different result as to justify a new trial.

2 & 3. Evidence discovered since trial and not earlier discoverable by the exercise of due diligence
¶ 53. Even quite powerful evidence might not require the ordering of a new trial if due diligence would have discovered the witness by the time of the original trial.
¶ 54. Pitts had been named by the victim and her husband at the time of the original trial. Nothing in their explanation of a relationship with Pitts suggests that she would have had meaningful evidence regarding these events. Pitts indicated that neither the prosecution nor the defense talked to her at the time of the first proceedings. She told the victim that she would not testify that a rape occurred. The record indicates that a detective agency hired by Hunt's mother after trial located Pitts. We do not find a meaningful dispute by the State that an absence of reasonable diligence is what caused this witness not earlier to have been discovered.
¶ 55. The dissent does find fault, though, with the industry exhibited by Pitts' original counsel. What is evident about the dissent is that it is viewing diligence by the always clearer-vision of hindsight. Pitts was a name heard at trial. She was not a mystery person never encountered during the original proceedings. Yet it is also evident that according to Pitts, the victim and the man she later married insisted that Pitts was an irrelevancy. She may well be, but that is a question for a new trial. Our issue is diligence. Diligence is not measured in retrospect. Few are the witnesses who were completely undiscoverable at the time of the original conviction. The dissent would find a lack of diligence whenever the new witness is a person whose name was mentioned at the time of the original trial, even though every indication was that this individual did not have useful evidence.
¶ 56. We find the test to be otherwise. Was there a reasonably diligent investigation, including the pursuit of individuals who were reasonably plausible as witnesses to relevant events? We find that failure to discover that Pitts had usable evidence was not from a lack of sufficient diligence.
¶ 57. The presentence report was prepared by someone who was not involved with the case until after trial. However, we have already expressed doubt that the presentence officer's opinion of the victim's credibility would have been admissible.
¶ 58. Finally, the social worker at the hospital was someone directly involved in the events immediately following the report of a rape. We find no explanation as to why she might not earlier have been found. Without some argument and evidence *514 as to whether a diligent investigation would have found this witness, we conclude that she was not shown to be a newly discovered witness.
¶ 59. Nonetheless, Sabrina Pitts was a witness that the record supports was not reasonably discoverable through the exercise of due diligence.

4 & 5. Evidence material and not merely cumulative or impeaching
¶ 60. Our prior discussion has already largely addressed the materiality of this evidence. In the battle of credibility that was the 1995 trial, Pitts' testimony in particular corroborated meaningful segments of Hunt's explanation of what had occurred. Some of it was impeachment, but a significant part of it was direct evidence of a prior relation with Hunt that was inconsistent with the victim's explanation of what happened. Most telling, Pitts said that the victim and Hunt (or someone who looked much like him) stayed behind at the bar together. This certainly impeaches Pitts' story but it more importantly also corroborates Hunt's testimony.
¶ 61. As we noted earlier, it is also proper for a trial judge in weighing whether to order a new trial not only to consider substantial testimony and other matters that fit within the definition of newly discovered evidence. Once the defense had offered meaningful new evidence that could not earlier have been discovered and which is not just impeachment, it would be proper in an exercise of discretion on whether an injustice may have been done, to weigh other evidence that perhaps a little more defense counsel diligence would have found earlier, or that may be impeachment. The exercise of deciding whether to grant a new trial should not be just a technical one. Within the requirements set out by caselaw, the court is to consider whether all the evidence presented leaves a "definite and firm conviction that a mistake has been made." Rochell v. State, 748 So.2d 103, 109 (Miss.1999) (quoting Reynolds v. State, 521 So.2d 914, 917-18 (Miss.1988)).

Conclusion
¶ 62. Ordering a new trial is not to be undertaken lightly. In this case, the new evidence may not be a truthful recitation of events. The State may be able to show reasons that Pitts has to support the new trial motion, whether because of favoritism towards Hunt and his family or due to bias towards her allegedly former friend, the victim. Still, if these witnesses are called at a new trial, and if their testimony is similar to what was presented in the record that is now before us, a much different case will exist for a jury. If there is more than just Hunt's word that he had met the victim at a bar and had not just burst in on her in her apartment, the jury issue is dramatically altered. This evidence in significant ways corroborates Hunt's explanation of what happened. Some of it also impeaches the victim's testimony. The new evidence raises too many significant questions about whether a mistake was made for us to permit this conviction to stand. If a new jury hearing all the evidence, prior and newly discovered, still convicted, we are not saying that the conviction would be infirm. We are only holding that the trial court abused its discretion in refusing to grant a new trial.
¶ 63. We reverse the trial judge's denial of post-conviction relief, set aside the 1995 judgment of conviction and order new proceedings on the indictment as are consistent with this opinion.
¶ 64. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY DENYING POST-CONVICTION RELIEF IS REVERSED. THE JUDGMENT OF CONVICTION OF *515 CLINT TRACE HUNT FOR RAPE AND HIS SENTENCE ON THAT CONVICTION ARE SET ASIDE. THE CAUSE IS REMANDED TO THE FORREST COUNTY CIRCUIT COURT FOR FURTHER PROCEEDINGS ON THE INDICTMENT. ALL COSTS ARE ASSESSED TO FORREST COUNTY.
McMILLIN, C.J., KING, P.J., MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, THOMAS AND LEE, JJ.
IRVING, J., dissenting.
¶ 65. Clinton Trace Hunt, a twice-convicted felon, was convicted in 1995 of rape as a habitual offender. He appealed his conviction and sentence to the Mississippi Supreme Court which deflected the appeal to this Court. We affirmed. Hunt. v. State, 706 So.2d 262 (table), 95-KA-00889 (Miss.Ct.App. Jan. 27, 1998).
¶ 66. Almost six years after affirming Hunt's conviction and sentence, the majority finds that the trial court abused its discretion in denying Hunt's motion for post-conviction relief which was based on an allegation of newly discovered evidence. The alleged newly discovered evidence is the proposed testimony of Sabrina Pitts. For several reasons, I do not believe the proposed testimony of Sabrina Pitts warrants the granting of a new trial as ordered by the majority. First, Hunt has not shown that, using reasonable diligence, he could not have discovered and interviewed Sabrina Pitts prior to his original trial. Second, as suggested by the State, the overwhelming majority of Pitts's proposed testimony is essentially impeachment testimony on collateral matters and would not be admissible. Third, I do not believe Pitts's testimony would probably change the results if a new trial was ordered. Therefore, I respectfully dissent.
¶ 67. In his post-conviction relief motion, Hunt made the following claim regarding the allegedly newly discovered evidence:
(1) The conviction rests upon false and misleading testimony. Newly discovered evidence not available to Mr. Hunt at the time of trial corroborates his claim of a consensual encounter with the alleged victim earlier in the week of December 13, 1993, and establishes, if the testimony of Sabrina Pitts as set out below is accepted, that the complaining witness perjured herself about never having seen Mr. Hunt prior to the putative encounter at her apartment, and that she perjured herself about never having been to Senore Frogs, Ropers, or other taverns in the Hattiesburg area until after the alleged assault.
¶ 68. In Sabrina Pitts's affidavit, which was attached as an exhibit to Hunt's PCR motion, she related the following facts which are relevant to the allegation of newly discovered evidence:
I was not called as a witness in the trial of Trace Clint Hunt nor did I know he had been tried and convicted of the crime of rape and sentenced to jail. I was with [the victim] the night that she met Clint Hunt. She met him either at Roper's Bar or Senor Frogs in Hattiesburg. I left her there talking with Clint Hunt. I did not go to her apartment that night, but rather caught a ride back to Laurel with some other girls. The following night, we were suppose to go out, the next day I went shopping to buy a dress as we were all going to go to the National Guard Christmas party. I had told [the victim] that I thought she had a nice guy and I didn't approve of her running around on him and if she continued, I would tell him. [The victim] *516 backed out of going to the National Guard party at the last minute. She had talked to someone on the phone, came back and said "she wasn't going." I told her that I might stay with her, I just didn't know, she wasn't expecting me to be back until somewhere around 2 p.m. I left the party early as I was not happy with my date and had them [sic] drop me off at [the victim's] apartment around mid-night. As we pulled into the apartment, I saw a guy run from the back of the apartment. I could not identify him, although I know it was not [the victim's fiance]. I went in, and she told me she had been raped. I told her I did not believe her, she did not look like someone who had been raped, there was nothing torn on her, she was dressed, not emotional and she refused to go to the police department. She said she knew who he was, that he lived a couple of houses back, she knew his number, knew something about his mom, and knew he had been in trouble before, she knew too much about this guy. I told her that I would not be a witness for her. A couple days later, I became aware that she had gone down to the police department or to the hospital. Later, she and [her fiance] came to Laurel and stayed in my apartment as I had gotten back with my husband.
¶ 69. During the hearing on Hunt's post-conviction relief motion, Pitts testified to things that she never said in her affidavit. For example, during her testimony at the hearing, she testified that the victim knew a lot about Hunt's personal history, his mother and where his mother worked. As can be seen from the affidavit, Pitts said that the victim told her that the victim "knew who raped her, that he lived a couple of houses back, she knew his number, knew something about his mom, and knew he had been in trouble before." In her affidavit, Pitts never stated that the victim identified the rapist as Hunt, yet, at the hearing on the PCR motion, Pitts testified that the person who the victim knew so much about was Hunt. This variance between what Pitts said in her affidavit and what she said during the PCR hearing on the key issue regarding the identity of the rapist raises serious doubt as to her credibility which the trial judge was not required to overlook.
¶ 70. The granting of a new trial on the basis of newly discovered evidence is justified if the evidence (1) will probably change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material to the issue, and (5) is not merely cumulative or impeaching. Moore v. State, 508 So.2d 666, 668 (Miss.1987). The proponent of the newly discovered evidence must satisfy all of the prerequisite criteria. See Black v. Stone County Lumber Co., 216 Miss. 844, 850, 63 So.2d 405, 407 (1953). The "determination of whether new evidence would probably change the results of a new trial is committed to the sound discretion of the trial judge." Moore, 508 So.2d at 668. An appellate court may reverse only if the trial court abused its discretion. Id.
¶ 71. Here, it is quite evident that Hunt failed to meet the required criteria. First, it is not disputed in this record that he offered no evidence of the efforts he made to locate Pitts prior to his first trial. Second, Pitts was identified during Hunt's original trial, and the victim was questioned about her. It cannot be said that Pitts was an unknown witness. The majority's conclusion that she was an unknown witness is just simply not supported by the record. During Hunt's original trial, Hunt's attorney, during cross-examination of the victim, asked the victim if anyone else lived in the apartment with her *517 and her child. The victim answered that a friend girl named Sabrina would come and visit. Hunt's attorney then engaged in an extensive exchange with the victim about Sabrina. The victim could not recall Sabrina's last name but she thought it might have been Johnson. However, I think it is fair to say that the victim did not attempt to mislead anyone about Sabrina's identity.
¶ 72. The victim testified that Sabrina lived in Laurel, that Sabrina had a three year old son, that she and Sabrina met at the Health Department when Sabrina was having her second baby and the victim was having her first one. She testified further that Sabrina would come over to the victim's aunt's house all the time and they would all cook for each other, that Sabrina was always having problems with Sabrina's boyfriend. The victim even testified that one time Sabrina came to the victim's apartment in the middle of the night, wanting to spend the night, and interrupted her and the victim's boyfriend while the victim and her boyfriend slept.
¶ 73. With the victim being questioned so extensively during Hunt's trial by Hunt's attorney, I think it is not open to reasonable debate that Sabrina Pitts was known to Hunt at the time of his trial and could have been located and interviewed if he had wanted to do so. Also, it must be remembered that, during the hearing on the PCR motion, Pitts testified that around the Christmas season in 1993, she was living on 7th Avenue in Laurel, Mississippi and that she was presently living at 27 Earl Pitts Road in Waynesboro, Mississippi. Hunt's counsel never asked her where she was living in 1995 during Hunt's trial. Perhaps, he did not ask because he did not want the answer to be memorialized in the record. However, his failing to ask must inure to Hunt's detriment because Hunt had an obligation to show that Pitts could not have been discovered in the exercise of due diligence.
¶ 74. The majority does not comment on the fact that Hunt offered no explanation for why Pitts was not, or could not have been, discovered prior to his first trial. Instead, the majority, without offering any precedent, authority, or facts to support its position finds "that [Hunt's] failure to discover that Pitts had usable evidence was not from a lack of diligence." As stated, the majority makes this finding without detailing the facts that constitute the diligence undertaken by Hunt. Of course, the majority can offer no facts because the record contains none. In the view of the majority, evidence is newly discovered even though the source of that evidence was known at the time of the original trial, if the proponent of the evidence decided at the time of trial that it was not worth pursuing but later discovered he was in error in making that determination. That is not the criterion for granting a new trial on the basis of newly discovered evidence.
¶ 75. It also is quite evident from Pitts's affidavit that her proposed testimony primarily impeaches some of the victim's trial testimony on non-material, collateral issues. However, none of her testimony goes to the fundamental factual issue of whether Hunt entered the victim's apartment and raped her. In fact, Pitts's testimony also contradicts, not corroborates, Hunt's testimony on the key issue of whether the victim was raped in the victim's apartment. Pitts testified that the victim told her that the victim had been raped in the victim's apartment. That is the location that the victim testified to at trial. On the other hand, Hunt contended that he had consensual sex with the victim but not in her apartment. He denied ever being in the victim's apartment.
*518 ¶ 76. The facts of this record speak forcefully in support of one clear conclusion: with due diligence, Hunt could have located and interviewed Pitts during his original trial. His original trial lasted three days. The victim testified on the second day of the trial. Therefore, it is not disputed that Hunt knew of Pitts's identity and where she lived at least one day before his original trial ended.
¶ 77. Since it is incumbent upon the proponent of newly discovered evidence to establish each of the five criteria discussed in the earlier portion of this dissent, and since Hunt failed to establish that he could not have discovered Pitts prior to his trial, I cannot agree that the trial judge abused his discretion in denying post-conviction relief.
¶ 78. The trial judge made only one specific finding of fact which is not directly related to the issue of the allegation of newly discovered evidence. It would have been helpful if the trial judge had made specific findings of fact with respect to the five criteria that must be met before a trial may be granted on the basis of newly discovered evidence. Nevertheless, the fact that he denied Hunt's motion for a new trial necessarily means that he determined that at least one of the prerequisites set forth in Moore was not met. The record fully supports that determination.
¶ 79. I note one other point. It is quite reasonable to conclude that the trial judge did not find Pitts's testimony credible on the key issue of the identity of the rapist. To reiterate, Pitts testified that the victim knew a lot about Hunt, yet the proof in Hunt's original trial was that the victim identified Hunt from a photographic lineup. Obviously, if the victim knew who her assailant was, she would have told that to the police when she first reported the crime. It is the trial judge who makes the determination as to whether the newly discovered evidence will probably make a difference if a new trial is ordered. Assessing the credibility of the witnesses who will be called is necessarily a part of that determinative analysis. Given the fact that the victim never identified Hunt as her assailant prior to picking him from a photographic lineup, the trial judge may very well have concluded that Pitts's assertion that the victim knew her assailant was simply not credible. On these facts, I find it too much of a stretch to say that the trial judge abused his discretion.
¶ 80. Returning briefly to the requirement that the evidence must be such that it could not have been discovered before the trial by the exercise of due diligence, I note that Hunt, in his PCR motion alleged that his trial counsel was ineffective for failing "to locate and/or call important witnesses whose testimony would have likely have resulted [sic] in acquittal by casting grave doubt upon the veracity of the State's one witness as to the guilt of the accused, to wit: Sabrina Pitts." It seems to me that this allegation supports a reasonable inference of admission by Hunt that Pitts's identity was known to him prior to his trial, or at least prior to the conclusion of it, for it is inexplicable how one can be faulted for not locating and/or calling a witness not known to exist.
¶ 81. For the reasons discussed, I respectfully dissent. I would affirm the judgment of the trial court denying post-conviction relief, for I find no abuse of discretion.
BRIDGES, THOMAS, AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.