742 So.2d 1190 (1999)
Lee SCOTT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01071-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*1192 William F. Vick, Jackson, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Aggrieved by his conviction for the transfer of cocaine in the Circuit Court of Covington County, Lee Scott appeals on the following issues of error:
I. WHETHER THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL IN THE LOWER COURT?
II. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO QUASH THE JURY POOL?
III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
Finding no error, we affirm.

FACTS
¶ 2. On March 16, 1996, during the daylight hours, Undercover Narcotics Officer Wayne Muscio and Agent Dan McIntosh met near Collins, Mississippi for the purposes of conducting undercover narcotics purchases from several unspecified individuals in Collins. Agent McIntosh provided Officer Muscio with money for the purchases and the details of the operation at their prearranged meeting location, after which Officer Muscio then drove to Collins in a 1981 Toyota pickup equipped with a hidden audio and video recorder.
¶ 3. Officer Muscio proceeded to drive to various places in Collins searching for persons engaging in the sale of narcotics. While driving on McLaurin Street, Officer Muscio slowed his vehicle as three males approached. Officer Muscio testified that as he backed up, Scott came closer to the vehicle and asked him, "What do you want, man?" Officer Muscio responded that he wanted a twenty dollar rock, at which time Scott reached in with one hand to take the money and handed Officer Muscio the narcotics with his other hand. This transaction was recorded on the hidden audio and video equipment in Officer Muscio's vehicle. Officer Muscio then drove to the prearranged meeting location and turned the narcotics over to Agent McIntosh. At trial, Officer Muscio identified Scott as the individual who had sold him the narcotics on March 16, 1996, and as the person portrayed in the audio and video recording.

ANALYSIS

I.
WHETHER THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL IN THE LOWER COURT?

II.
WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO QUASH THE JURY POOL?
¶ 4. Scott argues a number of instances of actions or inactions by his trial *1193 counsel which he alleges amounts to a deprivation of his Sixth Amendment right to effective assistance of counsel. Scott's challenge to the effectiveness of counsel he received at trial is dependant upon a successful completion of a two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). Under Strickland, Scott must show 1) that counsel's performance was deficient, and 2) that his defense was prejudiced by the deficient performance. Stringer, 454 So.2d at 476. The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). There is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. With this test in mind, we turn to Scott's allegations of ineffectiveness.
¶ 5. Scott raises five specific instances of alleged ineffective representation. First, Scott maintains that his trial counsel, Leslie Roussell, failed to heed the advice of the trial court that he should make a motion to quash the entire jury pool only to later raise that same allegedly suggested motion to quash and have it denied as untimely by the trial court. Second, Scott argues that Roussell's continued ineffectiveness is apparent in his decision not to challenge several of the potential jurors whom had stated during voir dire that they knew the defendant personally. Third, Scott argues that Roussell's ineffective assistance is further evident in that he did not cross-examine one of the State's witnesses who Scott claims to have been a key witness for the State, Agent McIntosh. Scott further draws attention to the Rousell's decision not to voir dire an expert witness for the State. Finally, Scott argues that his representation was ineffective as evident in Rousell's failure to call any witness on his behalf. Scott argues that these errors when combined amount to a denial of his right to effective assistance of counsel. We now turn to Scott's alleged instances of ineffective representation.

1. Failure to timely make a motion to quash the jury.
¶ 6. Scott's first part of this assignment alleges that during the jury selection the trial judge made the suggestion that defense counsel should prudently make a motion to quash the entire panel due to the supposed inability of the jury panel to acknowledge affirmatively during voir dire that they could return a verdict of not guilty should the prosecution fail to meet their burden in presenting their case against Scott. A careful review of the record reveals that this was not the case.
THE COURT: Mr. Roussell, you first struck Stacy Burnham. What was your reason for striking Mr. Burnham.
MR. ROUSSELL: Mr. Burnham was onmy reasons for No. 1my first three strikes, on Juror No. 1, 4 and 5 were all the same reason.
THE COURT: All right. What was it?
MR. ROUSSELL: I repeatedly asked the question about trying to get them to understand if the State did not cross the hurdle of burden of proof would they vote not guilty, and it was hard to actually determine every juror that did raise their hand, but I could see the first two rows the best and I concentrated on them. And Jurors 1, 4 and 5 did not raise their hands when I asked then if *1194 they would vote not guilty on that, if the State didn't meet its burden of proof would they vote not guilty.
MR. FORTENBERRY: Judge, I would ask to bring Juror No. 1 in. I saw him raise his hand.
THE COURT: I saw him raise his hand as well.
MR. ROUSSELL: Did Juror No. 1 raise his?
THE COURT: He was one of the few who did. I figured you would move to quash the whole panel myself. He's one of the few who did raise his hand.
MR. ROUSSELL: I'm not through yet.
THE COURT: Okay. Well, go ahead. That reason doesn't justify. Any other reasons for striking him?
MR. ROUSSELL: Well, another reason I wasn't very comfortable with Mr. Burnham was the fact when he filled out his thing, the only thing he put on here was his name.
THE COURT: That's right. He did not fill out his questionnaire.
¶ 7. While this previous listed exchange during jury selection between the court and Roussell may be open to differing interpretations when presenting argument to this Court on appeal, Scott has nevertheless misstated the record in arguing this assignment. Scott argues in his brief that the trial court did in fact advise Roussell to make the motion to quash the jury panel but that Roussell failed to heed the same. Our review of the record, taken in context, fails to reveal anything short of an off-the-cuff remark by the trial court rather than the asserted unheeded advisement as is asserted in Scott's brief. This alleged instance fails to demonstrate any deficient performance and, therefore, this argument is without merit.
¶ 8. Scott's second part of this assignment fares no better. Scott assigns error in the timeliness of a motion to quash the jury panel made by Roussell at the end of jury selection. Scott argues that Roussell's performance was deficient in that he failed to make said motion at a more appropriate time as is evidenced in the trial court's denial of said motion. At the close of the jury selection, Roussell returned to the issue of whether the venire had given adequate assurances in response to his voir dire that they could return a verdict of not guilty should the State fail in meeting their burden of proof.
THE COURT: All right. Any objections from the State in the manner in which the jury was chosen other than the ones stated.
MR. FORTENBERRY: No, Sir.
THE COURT: From the Defendant other than stated?
MR. ROUSSELL: None other than those stated already but I do object to the fact that at least about 60 percent it would appear to me that the jury couldn't understand when I asked them if they would go back and vote not guilty if the State didn't meet its burden of proof.
THE COURT: Well it's your obligation to make it clear.
MR. ROUSSELL: Well, I thoughI thought I asked them about three or four times. I asked it plain as day if the District Attorney fails to meet the burden of proof required beyond a reasonable doubt would you vote not guilty.
THE COURT: Well that's
MR. ROUSSELL: And I believe
THE COURT: So, what I if I sustain your objection, what happens.
MR. ROUSSELL: I move to quash the entire jury panel.
THE COURT: You haven't made that motion, so it's not before me.
MR. ROUSSELL: Well, I'll make then technically, I make that motion right now.
THE COURT: All right. I don't think it's timely, but I'll overrule it. I think you should have made your position more clear to the jurors.

*1195 MR. ROUSSELL: Well, I'm doing it during the jury selection process.
THE COURT: I think you should have made it more clear.
¶ 9. Scott's attempt to tie these two instances together: the alleged suggestion by the trial court to make a motion to quash the panel and Scott's argued premise that once Roussell did raise a motion to quash the panel it came too late and as a result it was ruled untimely and unsupported by the record. The record indicates that Roussell's motion was denied, not based on its timeliness, but rather on the grounds that Roussell should have made his questions more clear during voir dire. Having said this, we are likewise unpersuaded that Roussell's apparent failure to elicit a more concise response through a clearer formation of his questioning of the venire is substantial enough to support a claim of deficient performance on this issue. The "entire performance" of trial counsel rather than a single instance is taken into account in addressing whether a defendant was denied his right to effective assistance of counsel. Triplett v. State, 666 So.2d 1356, 1362 (Miss.1995). This assignment is without merit.

2. Failure to properly handle a situation in which some of the potential jurors were acquainted with the defendant.
¶ 10. In reviewing the present assignment of error, this Court is particularly dissuaded that this instance presents any deficient representation of Scott which warrants a finding of ineffective assistance at trial. Scott, without specifically presenting to this Court any argument, evidence or a particular instance, claims that the jury pool was unduly influenced by the fact that some of the potential jury members were acquainted with Scott. Scott's sole contention in this assignment is that Roussell's deficient representation is evident in his cavalier approach to the matter when he stated during jury selection that it does not bother him that one or some of the potential jury members were acquainted with Scott and that he thought that it was good that they were acquainted. Conduct of trial counsel is measured toward the view that he has wide latitudinal discretion in effectuating reasonable representation on behalf of his client and that the decisions made at trial are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss. 1995).
¶ 11. We note that of the four potential jurors who stated that they knew or were acquainted with Scott, none of them were seated as deciding jurors in Scott's case; Juror No. 27 was, however, selected as an alternate but took no part in the deliberations. Juror No. 8 stated that she was a friend of Scott's and that she could not be fair or impartial and she was therefore excused by the court. Jurors No. 12 and 17 each stated that they knew of Scott but that the knowledge extended only to seeing him around town; they stated that, if selected, they could be fair and impartial. Both were struck by the State as peremptory strikes. Juror No. 27 stated that his acquaintance with Scott extended to business contacts between his and Scott's family, but that he could be fair and impartial if he were selected as a juror. He was selected as an alternate.
¶ 12. Scott's primary argument apparently is centered on the premise that any acquaintance between potential jurors and a defendant is or should be considered detrimental to the defendant. We are not persuaded. First, as noted earlier, Juror No. 27 was the only one of the four who was selected to sit as a juror in Scott's trial and as an alternate taking no part in the final deliberations. When asked if he could be fair and impartial Juror No. 27 stated that he could. In view of the wide latitude afforded trial counsel in rendering assistance under the ambit of trial strategy, this assignment is without merit.

3. Failure to provide proper assistance of counsel in the questioning and calling of witnesses.
¶ 13. Scott argues that Roussell failed to provide any type of defense or *1196 case on his behalf. Scott points to three particular instances occurring during trial which he claims is representative of the overall deficient performance afforded him at trial. Scott's assignment lies in the following instances of assigned deficient performance: 1) Roussell did not cross-examine Agent McIntosh, 2) Roussell did not conduct any voir dire of prosecution's expert witness in forensic science, and 3) Roussell did not offer any witnesses on behalf of Scott and presented no case-in-chief.
¶ 14. Counsel's choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy. Cole v. State, 666 So.2d 767, 777 (Miss.1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). Likewise, upon a careful review of the record and the instances assigned by Scott, we are not persuaded that these instances fall outside the ambit of trial strategy as to infer any deficient performance of representation on the part of Roussell. Scott's contention that Roussell's failure in these decisions was both prejudicially deficient and that a "reasonable probability" of a more favorable result would have occurred has not been shown. The decisions in question 1) to forgo any cross-examination of Agent McIntosh, 2) to forgo any voir dire of an expert witness prior to acceptance, whose qualifications were exceptional, and 3) to forgo the calling of any witnesses in defense of Scott have neither been argued as to how they were prejudicial to Scott's defense nor presented in a manner on appeal which would demonstrate to this Court that a more favorable outcome other than the one reached was probable had Roussell decided other than he did.
¶ 15. The testimony of Agent McIntosh, which consisted of one and one-half pages in length, neither harmed Scott's defense nor benefitted the State's case in any significant manner. Agent McIntosh's sole contribution to the proceedings was to establish his role in receiving the suspected substance from Officer Muscio and then transporting the substance to the crime lab. In light of Agent McIntosh's limited role, as is evidenced in his testimony, we cannot see how this instance constitutes ineffective assistance as alleged by Scott. It should be quickly noted, in response to Scott's claim that ineffective assistance can be found in Roussell's decision not to call any witnesses, that Scott, himself, elected not to testify and on appeal has not provided this Court with any names of potential witnesses or argued what testimony they could have provided had they been called by Roussell. We can find no resulting prejudice to Scott from the actions or inactions of his trial counsel and therefore conclude that a reasonable probability of a different outcome is absent as required under Strickland. This assignment of error is without merit.

III.
WHETHER THE TRIAL COURT ERRED IN DENYING APPELANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 16. Scott argues that the trial court erred in denying his motion for judgment notwithstanding the verdict. Motions for judgment notwithstanding the verdict challenge the legal sufficiency of the evidence supporting the jury's verdict of guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Scott's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of *1197 the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383, 1388 (Miss. 1995) (quoting McClain, 625 So.2d at 778).
¶ 17. In determining whether the evidence considered by the jury in reaching their verdict was such that no reasonable or fair minded person could have found any other way but not guilty, we must accept as true the credible evidence consistent with Scott's guilt. The evidence presented to the jury included not only the testimony of Officer Muscio, but also the captured images and sounds of the illegal transaction as it unfolded. The jury was free to accept or reject any or all of the evidence presented and to accord as much weight and credibility to the evidence as was needed to reach their verdict. Meshell v. State, 506 So.2d 989, 992 (Miss. 1987). In this light, we cannot conclude that the jury's verdict was such that reasonable and fair-minded jurors could have only found the defendant not guilty. This assignment is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION OF TRANSFER OF COCAINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE COVINGTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.