# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00404-COA

**REGINALD BARNES**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2020 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | EDWARD BLACKMON BRADFORD JEROME BLACKMON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: PARKER ALAN PROCTOR JR. |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/12/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Reginald Barnes was indicted on two counts of sexual battery pursuant to Mississippi Code Annotated sections 97-3-97 (Rev. 2014) and 97-3-95(2) (Rev. 2014) in the First Judicial District of Hinds County on October 25, 2018.  After multiple days of trial in November 2020, a jury found Barnes not guilty of sexual battery in Counts I and II. However, the jury found Barnes guilty, in both counts, of the lesser offense of fondling, pursuant to Mississippi Code Annotated section 97-5-23 (Supp. 2015).  For each conviction, Barnes was sentenced to fifteen years in the custody of the Mississippi Department of

Corrections (MDOC), with three of those years suspended and twelve years to serve, with the sentences ordered to run concurrently. Upon release, Barnes was to be placed on supervised probation for a period of three years, was required to register as a sex offender, was ordered to have no contact with the victim, and was ordered to pay a fine in the amount of $7,500 during the period of his probation.[1]

## FACTS AND PROCEDURAL HISTORY

¶2.     D.W.[2] was a senior at Provine High School (Provine) when both of the alleged sexual encounters occurred between her and Barnes. According to D.W., one encounter occurred in August 2018 and the other occurred in September 2018. D.W. was unable to give exact dates for either encounter. She testified that prior to attending Provine, she attended J.J. McClain High School (McClain)[3] in Holmes County. D.W. first became familiar with Barnes when she was a student at McClain, and Barnes was the vo-tech principal there. D.W. testified that one day at McClain, while she was in the office before class, Barnes told her that her "underwear were too small." D.W. did not tell her parents about Barnes'

---

[1] On November 30, 2020, two separate sentencing orders were entered, one for each count, and each stated that Barnes entered a plea of guilty to the crime of fondling. Barnes was actually found guilty by a jury of two counts of fondling. Subsequently, on December 8, 2020, two amended sentencing orders were signed, which correctly stated that Barnes was found guilty rather than having pled guilty. However, while one sentencing order stated that he was found guilty of fondling, the other sentencing order contained an obvious scrivener's error and mistakenly stated that Barnes was found guilty of sexual battery. It does not appear from the record that this erroneous amended sentencing order has been corrected.

[2] Initials have been used in this case to protect the identities of the minors.

[3] D.W. testified that J.J. McClain High School later changed its name to Holmes County Central High School.

2

comment and testified that she "tried to laugh it off as if it was nothing." Based upon this prior experience, D.W. testified that she recognized Barnes at Provine on the first day of school when all the students were gathered in the gym to meet the teachers and principals.

¶3. As to Count I, D.W. testified that while she was not one of Barnes' students, she was in his classroom on one occasion in August 2018. According to D.W., she had gotten in an altercation with another student in her assigned class and entered Barnes' empty classroom to remove herself from the situation and to cool off. D.W. testified that she was "in there cleaning up, and he came in. And me and him talked for a minute, and he asked me to do it for him. And I said, 'sure.'" When asked by counsel to clarify what she meant by "it," D.W. testified that Barnes "asked [her] to give him oral." D.W. claims that Barnes unzipped his pants, she got on her knees and did what he asked. D.W. did not report the incident to the principal or anyone else at that time.

¶4. Barnes did not testify at trial, but his written statement dated October 12, 2018, reveals:

> In an attempt to help a former student of mine, ([D.W.]) that attended the Holmes County School District, I began to try to help her so that she can remain out of trouble. There were two times that she stayed in my classroom during my planning period, as I conducted other duties. The main purpose of this was to keep her from walking the hallway and remain out of trouble. On those two occasions, she attempted to have intercourse (sexual) with me. On the first time as I entered back into the classroom, she approached me as if to give me oral sex. I immediately stopped, but she approached me again.

When specifically asked by investigators, "Did [D.W.] pull your penis out during this encounter?" Barnes stated, "No, there was an attempt to, however, I immediately stopped the intent." Later in the investigator's interview, Barnes was asked again, "Did [D.W.] pull your

3

penis out?" Barnes responded, "[Y]es." Barnes further describes the incident by stating, "[D.W.] unzipped my pants and pulled my penis out. I then backed away from her and asked her to leave." Barnes did not report this incident when it happened.

¶5. D.W. was in Barnes' empty classroom during his planning period in September 2018 when the allegations contained in Count II of the indictment occurred. According to D.W.,

> I was behind a desk, and he came in the classroom and closed the door. He came behind the desk where I was, and he held his hand out to me as if he was going to help me up off the floor. But instead, he just pushed me down onto the floor and put his hands in my pants. He fingered me, took his hands out of my pants and put them in my mouth.

D.W. did not report the incident to the principal or anyone else at the school at that time.

¶6. Again, while Barnes did not testify at trial, in his written statement he related his version of the events of that day:

> In addition she also took my hand and placed it on her genitalia area asking me to stick my finger there (this occurred on the second time). After this I made it a point for her not to come to my room at anytime and required her to leave, especially since she is not one of my students that I teach.

Barnes did not report this incident at the time that it occurred.

¶7. In October 2018, D.W. made two audio recordings on her cell phone of conversations she had with Barnes. One recording was approximately eight minutes in length, and the other was approximately two and one-half minutes. According to D.W., she made the recordings "[b]ecause [she] felt like somebody needed to know that [she] wasn't lying." After objection by defense counsel, the first recording was played for the jury, and then D.W. was questioned about the substance of the audio. D.W. testified as follows:

> What I remember, we were basically talking about school. And then I guess

4

he thought I was recording, which I was, but I didn't know that he would have picked up on it. So he asked me if I could show him my phone, and I was scared to take it out of my bra because I didn't know what was going to happen. I didn't know if he was going to see that I was recording or not. So I just pressed my power button and showed it to him.

The second recording was also played for the jury. After the recording was played, D.W. was questioned about the substance of this recording. D.W. testified as follows:

[Barnes] pulled me to the side and told me that he had shaved all down there. And he asked me if I could come over after school, but I told him that I had to go home. He asked me again. I told him I needed to go home today because I didn't have any after school programs[.]

¶8. On October 12, 2018, D.W. and two other female students went to the school office and told the office manager, Debra Sawyer-Lawson, that they wanted to report a perverted teacher. Sawyer-Lawson separated the girls and instructed them each to write a statement. Pursuant to school protocol, Sawyer-Lawson then contacted the assistant principal, Erica Gee-Bradley. Gee-Bradley spoke with D.W., and D.W. played the audio recordings from her cell phone. According to Gee-Bradley, she recognized Barnes' voice in the recording but had her play the recordings twice to verify the content. Gee-Bradley immediately notified campus law enforcement and turned the matter over to them for further investigation. Jackson Public School (JPS) Police Investigators Shalonda Hiley and William Waples took over the investigation at that point. Investigator Waples took the statement from Barnes, parts of which are noted above.

¶9. After being indicted on two counts of sexual battery, Barnes' trial began on November 9, 2020. The State called six witnesses at trial, including Investigator Hiley; D.W.'s stepmother, Leshair Fisher-Warren; D.W.; Sawyer-Lawson; Gee-Bradley; and Investigator

5

Waples. Barnes did not testify, but defense counsel called two former Provine students, N.B. and M.G. Barnes was ultimately found guilty of two counts of fondling pursuant to Mississippi Code Annotated section 97-5-23. Having been granted extensions of time by the court, on February 11, 2021, Barnes filed a "Motion for Judgment Notwithstanding the Verdict or, Alternatively, Motion for New Trial." An order denying his motion was entered on April 12, 2021. Aggrieved, Barnes appealed and raises eight issues, which we discuss separately below.

## ANALYSIS

I. **Did the trial court err in giving a jury instruction that "[t]he unsubstantiated and uncorroborated testimony of a victim of a sex crime is sufficient to support a guilty verdict if their testimony is not discredited or contradicted by other credible evidence?"**

¶10. Barnes' counsel did not make a contemporaneous objection to the State's proposed Jury Instruction S-6, which was given to the jury as Jury Instruction 11. The Mississippi Supreme Court has held that the failure to make a contemporaneous objection waives the right to raise the issue on appeal. *Walker v. State*, 671 So. 2d 581, 623 (Miss. 1995); *Ballenger v. State*, 667 So. 2d 1242, 1259 (Miss. 1995). Further, "[i]n *Southern v. Mississippi State Hosp.*, 853 So. 2d 1212, [1214-15] (Miss. 2003), [the Mississippi Supreme Court] reiterated the important procedural tenet that '[a] trial judge cannot be put in error on a matter not presented to him.'" *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Id.* (citing *Parker v. Miss. Game & Fish Comm'n*, 555

6

So. 2d 725, 730 (Miss. 1989)).

¶11.    Notwithstanding the procedural bar, Barnes' claim regarding Jury Instruction 11 is without merit.  Jury Instruction 11 stated that "[t]he 'unsubstantiated and uncorroborated testimony of a victim [of a sex crime] is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence[.]'"  Barnes claims that the instruction is an "incorrect statement of the law" and "acted as an improper comment on the evidence."  According to Barnes, the instruction given "was erroneous as a matter of law and was an improper comment on the evidence."

¶12.    When considering a challenge to a jury instruction on appeal, "this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993). Similarly, the Mississippi Supreme Court has stated that "in determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole.  When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997) (quoting *Collins v. State*, 691 So. 2d 918, 922 (Miss.1997)).  If all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results. *Id*.

¶13.    In *Pitts v. State*, 291 So. 3d 751, 757 (¶34) (Miss. 2020), the Mississippi Supreme Court held that a similar jury instruction to the one given in the case here regarding the uncorroborated testimony of a victim of a sex crime was not erroneous.  Further, and

7

identical to the case at hand, in *Willard v. State*, 219 So. 3d 569, 576 (¶30) (Miss. Ct. App. 2017), the jury instruction in that case did not include language regarding the jury's exclusive role in judging the credibility of the testimony. In *Willard*, this Court stated:

> According to Willard, the circuit court erred by [giving] instruction S–6 over his lawyer's objection. Instruction S–6 stated that "the uncorroborated testimony of a sexual battery victim alone is sufficient to sustain a conviction for sexual battery where it is consistent with the circumstances." Willard acknowledges that the substance of the instruction is a principle that is often discussed incident to an appellate review of the sufficiency of the evidence. *See Bozeman v. State*, 208 So. 3d 1091, 1093 (¶6) (Miss. Ct. App. 2017). But Willard argues that instructing the jury on that principle operated as an improper comment on the evidence. Willard further claims that the instruction "encouraged circumvention of the [S]tate's obligation to prove guilt beyond a reasonable doubt" and that it gave the jurors the impression that they could find him guilty "even if [they] found Sally's testimony was not believable." "Jury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion." *Moody v. State*, 202 So.3d 1235, 1236-37 (¶7) (Miss. 2016). Furthermore, an appellate court must review the jury instructions as a whole, and when they "fairly—although not perfectly—announce the applicable primary rules of law" we will not find reversible error. *Id*. at 1237 (¶7).

*Id*.

¶14.	While Jury Instruction 11 does not include the language "if accepted as true by the finder of fact," this Court must consider **all** the instructions given to the jury in order to determine whether the jury was properly instructed. Jury Instruction 13 clearly states that the jurors "are the sole and exclusive judges of the credibility of each of the witnesses." So, while Barnes argues on appeal that Jury Instruction 11 did not specifically state that the uncorroborated statement may be sufficient "if the jury finds it truthful," as it did in the instruction in *Pitts*, this Court must also consider Jury Instruction 13, which addressed the jury's responsibility to weigh the credibility of each witness. *Id*. Further, Jury Instruction

8

11 correctly states the law as set forth in *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006). In *Miley*, the supreme court held that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Id*. Therefore, we find no error in the trial court's giving of Jury Instruction 11.

**II.    Was it error for Investigator Hiley to be allowed to give expert testimony even though the State did not properly qualify her as an expert witness pursuant to Mississippi Rule of Evidence 702?**

¶15.    This issue arises from the following exchange between the State and Hiley during direct examination:

Q.    Now, we've talked about the fellatio or the oral sex. What month did your investigation reveal that Dr. Barnes fingered [D.W.]?
A.    It happened sometime between September and -- the beginning of September and the end of September.
Q.    Okay. As part--as part of your professional experience, is it uncommon for students, kids, to not know the exact days of when things happen?
A.    It--it's very uncommon because they're -- they become afraid to come out and tell the truth when it actually -- when it first happened. So it's very uncommon for any child who has been involved in something this dramatic to forget the dates--specific dates of when it happened, but they'll remember the month.

Barnes did not make a contemporaneous objection to Hiley's testimony at trial. This argument is procedurally barred and cannot be raised for the first time on appeal. *See supra* ¶10.

¶16.    Notwithstanding the procedural bar, Barnes' argument is without merit. Barnes argues on appeal that such testimony was an expert opinion pursuant to Mississippi Rule of Evidence 702 because it was based upon Hiley's "professional experience." Barnes contends

9

on appeal that it should have been excluded because the State failed to qualify Hiley as an expert witness. It is undisputed that the State failed to designate Hiley as an expert prior to trial and did not offer Hiley as an expert at trial. Hiley was not accepted as an expert by the trial court.

¶17. However, as shown above, Hiley was asked to answer a question based upon her professional experience. The answer she gave was neither an expert opinion nor a lay opinion, it was fact testimony based upon her perceptions as an investigator. A similar situation was addressed in *Saddler v. State*, 297 So. 3d 234, 241 (¶22) (Miss. 2020), where the supreme court stated:

> Saddler argues that Cooper gave impermissible opinion testimony when the State asked, "Based on your experience, is it common for a person to deny a crime before they admit it when they're being questioned[?]" Cooper answered, "[y]es, sir, majority of them do." Saddler objected to the testimony as improper lay opinion testimony. The State argues that the statement is admissible under Mississippi Rule of Evidence 701, because it was based on the witness's perception, helpful for understanding a fact in issue, and not based on specialized knowledge. Saddler argues that Cooper's opinion is based on his experience as a police officer, thus the opinion would be improper as lay testimony. However, the testimony offered by Cooper was neither expert opinion testimony nor lay opinion testimony. Instead, Cooper offered fact testimony based on his perceptions as a police officer.

The same is true in this case. Accordingly, there was no error in the admission of Hiley's testimony in this regard.

**III.    Did the circuit court err in allowing alleged inadmissible hearsay evidence at trial?**

¶18. Barnes alleges on appeal that there were three specific instances when hearsay evidence was wrongfully allowed at trial. In *Pitts*, 291 So. 3d at 755 (¶16), the supreme court

held:

> We review the admission of hearsay evidence for abuse of discretion. *Blake v. State*, 256 So. 3d 1161, 1168 (Miss. 2018). "This Court will affirm the trial court's ruling unless it can safely say that the trial court abused its discretion in allowing or disallowing evidence to the prejudice of the accused." *Tubbs v. State*, 185 So. 3d 363, 367 (Miss. 2016) (citing *Ellis v. State*, 934 So. 2d 1000, 1004 (Miss. 2006)).

We address each of Barnes' allegations below.

### A. Leshair Fisher-Warren, D.W.'s Stepmother

¶19. Over the objection of the defendant, D.W.'s stepmother was allowed to testify that D.W. told her a male teacher said provocative things to her at school that made her feel uncomfortable. D.W. was not of tender years, *see* MRE 803(25), and the stepmother took no action in response to the report. We find no exception to the prohibition against hearsay to support the admission of the stepmother's testimony in this regard. However, while the stepmother gave no details of what Barnes may have said, D.W. testified, in detail, concerning the statements Barnes made to her. In *Garcia-Lebron v. State*, 323 So. 3d 1159, 1165-66 (¶25) (Miss. Ct. App. 2021), this Court said:

> Further, assuming for the sake of argument that the circuit court abused its discretion when it allowed the testimony at issue, we find that the statement's admission would be harmless and not reversible error. *See Chaupette v. State*, 136 So. 3d 1041, 1047 (¶12) (Miss. 2014) ("We will not reverse a conviction based on a harmless error."). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶32) (Miss. 2018). Anna, John, and Daniel all testified that Garcia-Lebron was responsible for Anna's and John's injuries. Thus, even if Mendoza had not been allowed to say that Anna blamed Garcia-Lebron for her and John's injuries, Anna and her children would have given more prejudicial testimony against Garcia-Lebron that would have been sufficient to support the same convictions.

11

Thus, we find no reversible error occurred because Barnes was not prejudiced by the admission of the stepmother's testimony.

### B.      Debra Sawyer-Lawson

¶20.    Barnes next complains that Sawyer-Lawson, the school's office manager, was allowed to testify that "[D.W.] entered the office with two other students, females, and they said they wanted to speak with me about a perverted teacher and she gave me that teacher's name." However, there was no contemporaneous objection to this testimony. Accordingly, this issue may not be raised on appeal. *See supra* ¶10.  In any event, this testimony is not hearsay.  It was not offered for the truth of the matter asserted, but instead it was offered to show the information upon which the school initiated its investigation of the matter. *See Liddell v. State*, 281 So. 3d 34, 37 (¶6) (Miss. Ct. App. 2019).  We find no error in the admission of this testimony.

### C.      Erica Gee-Bradley

¶21.    Barnes next argues that the trial court erred by allowing Gee-Bradley, the assistant principal, to testify that D.W. told her something inappropriate sexually had happened.  The testimony from Sawyer-Lawson shows that the initial report was made when D.W. and two other females came to Sawyer-Lawson to make a report.  Sawyer-Lawson separated the three and asked that they each write a statement.  At that point, Sawyer-Lawson contacted Gee-Bradley, who further investigated the situation.  Gee-Bradley's testimony was not offered to prove the truth of D.W.'s statement; instead, it was offered to show the information upon which she took further action. *Liddell*, 281 So. 3d at 37 (¶6).  This statement was not

12

hearsay, and its admission was not error.

**IV.    Did the testimony of Assistant Principal Gee-Bradley that other female students had complaints regarding Barnes violate Mississippi Rule of Evidence 404(b)?**

¶22.    Barnes also argues that Gee-Bradley's testimony that two other students also gave written statements was a violation of Mississippi Rule of Evidence 404(b).  The record is clear: these two students approached Sawyer-Lawson with D.W. to make a report.  Gee-Bradley did not give any details of the statements written by the other two students.  All three students came to Gee-Bradley at the same time, and Gee-Bradley began an investigation as a result.  In any event, there was no contemporaneous objection, so this issue is waived on appeal.  *See supra* ¶10.

**V.    Was it error for the trial court to admit the recordings of the alleged conversations between D.W. and Barnes, which were provided to the defense on the first day of trial?**

¶23.    The record shows that prior to making her report to school officials, D.W. hid her cell phone on her person and recorded two conversations between herself and Barnes.  These two conversations occurred at different times and in different places.  The first conversation, approximately eight minutes long (Recording A), was in a classroom.  The second conversation, approximately two minutes and thirty seconds long (Recording B), took place in a hallway.  At some point after D.W. made her report to school officials, an investigator played the recordings on D.W.'s phone and recorded them on a cassette tape.  According to representations made by the State, these recordings were identified and discussed in the written reports, which were disclosed to the defense early during the discovery process.

13

Also, according to the State, copies of the recordings on a CD were given to Barnes' previous counsel. Defense counsel acknowledged during arguments that they had listened to the CD but claimed that the recording was inaudible.

¶24. On November 5, 2020, the Thursday before the week of trial, the State gave the defense attorneys a new copy of the recordings. Then, on November 9, 2020, the day the jury was selected and the day before testimony was to begin, the State gave the defense another version of the recordings. The defense then filed a motion in limine to exclude the recordings for lack of relevancy, lack of authenticity, and on the basis of hearsay. The motion in limine did not include a claim of a discovery violation. The motion was heard during the trial on November 10, 2020.

¶25. In support of the motion, defense counsel argued that because the recordings were inaudible, there was nothing for them to prepare to defend. Then the day before the trial, the State produced an "enhanced" version that made the conversations more understandable. For the first time during the argument on the motion, defense counsel maintained that the State had not previously disclosed Recording B. Ultimately the defense withdrew the objection to Recording A but maintained the objection to Recording B.

¶26. The State countered that both recordings were identified in written discovery and had been given to the defendant's prior counsel. Further, the State maintained that the recordings had not been "enhanced" or altered in any way. Instead, they had been recorded in a different format that made them more intelligible.

¶27. After hearing arguments from both sides and after hearing all versions of the

14

recordings, the trial court ruled that so long as the recordings are properly authenticated by

a witness, they would be admitted.  The court also said:

> Now, the credibility of the recording will be a question to be decided by the jury.  But as far as admissibility at this time, as the recording A, the State has produced sufficient evidence that they did notify timely of the existence of that recording.  It's my understanding that the eight-minute recording, as stated by defense counsel, that they had knowledge of that the entire time.
>
> As to Recording B, which is a two -- two-minute, 30-second recording, defense counsel has indicated that they learned of the recording on Thursday just prior -- the Thursday prior to the trial week.  The Court did not receive a request to -- for additional time to review that evidence or its impact on the trial, so the Court will deem that it is also admissible.
>
> It is the Court's understanding that the recordings were not sent to any type of professional service to do any type of remixing or any type or technical requirements.  They just recorded it on something different.  The same thing could have been done by defense counsel prior to trial, either for the eight-minute or the two-and-a-half-minute recording.

¶28.    As to Recording A, the trial court found there was clearly no discovery violation.  To

the extent the disclosure of Recording B could be considered to be untimely, the Court noted

that defense counsel had not requested additional time to prepare to meet that evidence.  In

*Dancy v. State*, 287 So. 3d 931, 939 (¶¶31, 32) (Miss. 2020), the supreme court said:

> Both Dancy and the State agree that Mississippi Rule of Criminal Procedure 17.9(b) governs this issue.  "This rule . . . adopted the procedures set forth in *Box v. State*, 437 So. 2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring)." *Terrell v. State*, 237 So. 3d 717, 730 (Miss. 2018).  "These *Box* procedures apply when the State attempts to enter previously undisclosed evidence over the defendant's objection." *Id*. (citing *McCullough v. State*, 750 So. 2d 1212, 1217 (Miss. 1999)).  This Court has provided specific guidance to trial courts on the *Box* procedure and has explained that,
>
>> When faced with previously undisclosed evidence to which the defendant has objected, the trial court should give the defendant a reasonable opportunity to familiarize himself with the

> evidence. If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance. Should the defendant fail to request a continuance, he has waived the issue.
>
> *McCullough*, 750 So. 2d at 1217 (emphasis added) (quoting *Snelson v. State*, 704 So. 2d 452, 458 (Miss. 1997)).
>
> Under *McCullough*, Dancy has waived this issue for appellate review by failing to seek a continuance. Procedural bar aside, we find no abuse of discretion.

On appeal, Barnes claims that the trial court erred by admitting the second recording because of its late disclosure and because the court failed to follow the process set forth above. However, we find that it was Barnes who failed to follow the procedure set out by the rule. Barnes simply sought to exclude the evidence, and once the trial court ruled, he did not seek additional time or request a continuance. Because he failed to seek a continuance, we find that Barnes has waived this issue for appellate review.

### VI. Was Barnes entitled to a new trial as a result of the admission of a statement he purportedly gave to a JPS investigator?

¶29. "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." *Jones v. State*, 283 So. 3d 64, 68 (¶21) (Miss. 2019). In the case at hand, this Court must determine whether the trial court abused its discretion in allowing Barnes' handwritten statement into evidence at trial.

¶30. Investigator Waples was called as a witness for the State. During the period at issue here, Waples served as an investigator for JPS and his job was to investigate criminal cases. He testified that in October 2018 he was involved in a case at Provine involving a teacher

16

and a student having sex. As a part of that investigation, he interviewed Barnes, whom he identified in the courtroom. Prior to questioning Barnes, he provided Barnes the *Miranda* rights. Waples identified the written form and indicated that he went over the form with Barnes, who acknowledged that he understood his rights. Barnes then signed the document indicating that he waived his rights and was willing to make a statement and answer questions. This form was admitted into evidence, without objection, as Exhibit 3.

¶31. Investigator Waples testified that Barnes then provided a written statement. Before presenting the statement to Investigator Waples for identification, the State showed the document to defense counsel, who announced an objection to the document. The jury was excused, and the trial court heard the defense's objection.

¶32. Barnes' counsel advised the court that Barnes' written statement had not been produced in discovery, that defense counsel had never seen the written statement, and that as such it amounted to trial by ambush. The State responded that Barnes' written statement had been provided to the defense and represented that paper discovery had been provided electronically to the defense in PDF format. The State further contended that the four-page written statement of the defendant began on page 70 of the 75-page discovery response. The State also argued that Barnes' statement was contained in Waples' report. Waples' report, which was admitted for identification only, clearly stated that Barnes had given a written statement and then repeated the statement, verbatim, within the report. The State indicated that this report was also contained in the discovery response on pages 27-29 of the PDF document. In response, the defense acknowledged that it was familiar with Waples' report

but continued to insist that Barnes' handwritten statement had not been produced.

¶33. The trial court found that no discovery violation had occurred. We find no abuse of discretion in this ruling.

### VII. Did Barnes receive ineffective assistance of counsel at trial?

¶34. Barnes argues six claims of ineffective assistance of counsel on direct appeal, as follows: (1) counsel's failure to object to Jury Instruction 11; (2) counsel's failure to object to Investigator Hiley's expert testimony; (3) counsel's failure to object to inadmissible hearsay admitted thorough the testimony of Sawyer-Lawson and Gee-Bradley; (4) counsel's failure to object to Rule 404(b) testimony given by Gee-Bradley; (5) counsel's failure to ascertain that Barnes gave a statement to Investigator Waples; and (6) counsel's failure to follow the rules regarding the alleged victim's sexual history, which resulted in the exclusion of testimony from defense witnesses.

¶35. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), established the standard for which an ineffective-assistance-of-counsel claim must be proved:

> First, the defendant must show that counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. **Unless a defendant makes both showings, it cannot be said that the conviction or a death sentence resulted from a breakdown in the adversary process** that renders the result unreliable.

(Emphasis added). In *Sandlin v. State*, 312 So. 3d 1191, 1197-98 (¶14) (Miss. Ct. App. 2020), *cert. denied*, 312 So. 3d 730 (Miss. 2021), this Court stated in part:

18

Both prongs of the *Strickland* test must be proved, or the claim of ineffective assistance of counsel fails. [*Strickland*, 466 U.S. at 687]. As to the first prong, this Court has held that "the accused is not entitled to errorless counsel, and not counsel judged ineffective by hindsight. Each case is to be decided on the totality of the facts of the entire record." *Stringer v. State*, 454 So. 2d 468, 476 (Miss. 1984). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Id*. at 477. "Because of the difficulties inherent in making the evaluation, **a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance**; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Wilcher v. State*, 863 So. 2d 776, 796 (¶30) (Miss. 2003) (citing *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)). In determining what falls into the category of trial strategy, this Court has held that "[c]ounsel's choice of whether or not to file certain motions, call certain witnesses, ask certain questions, **or make certain objections** falls within the ambit of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Scott v. State*, 742 So. 2d 1190 (¶14) (Miss. Ct. App. 1999)).

(Emphasis added).

¶36. While claims for ineffective assistance of counsel are usually an issue for post-conviction relief, in *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)), the Mississippi Supreme Court said:

"[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016) (internal quotation marks omitted) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015)). This Court will address such claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Id*. (alterations in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)). This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *See, e.g.*, *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss.

19

2017); *see also* M.R.A.P. 22.

In the case at hand, this Court must examine the record to determine whether it "affirmatively shows ineffectiveness of constitutional dimensions," or whether the record "affirmatively shows that the claims are without merit" before a *Strickland* analysis is considered. We consider each claim below.

### A. Failure to Object to Jury Instruction 11

¶37. As noted above, Jury Instruction 11 was a proper statement of the law, and when considered with the other instructions given to the jury, particularly Jury Instruction 13, we find that the jury was properly instructed. Failure to object to a proper instruction cannot be considered to be deficient performance. This issue is without merit.

### B. Failure to Object to Investigator Hiley's Expert Testimony

¶38. We have found that Investigator Hiley's testimony was not expert testimony and that it was properly admitted fact testimony. Accordingly, failure to challenge Investigator Hiley's testimony as "expert" opinion testimony cannot be considered deficient performance. This issue is without merit.

### C. Failure to Object to Inadmissible Hearsay

¶39. We have found that the questioned testimony by Sawyer-Lawson and Gee-Bradley was not hearsay. Failure of counsel to raise a hearsay objection to such testimony cannot be considered deficient performance. Counsel's failure to request a limiting instruction rightly can be considered trial strategy. Counsel could well have determined that any such instruction could unduly highlight the testimony for the jury and simply chose not to do so.

The issue related to these two witnesses is without merit.

### D. Failure to Object to Rule 404(b) Testimony Given by Gee-Bradley

¶40. As stated above, Gee-Bradley did testify that two other students gave written statements at the same time that D.W. made her report. However, there was no testimony concerning the content or details of the statements by the other two students. We find that counsel's decision not to raise an objection or unduly highlight such brief testimony falls within the ambit of trial strategy. This issue is without merit.

### E. Failure to Ascertain that Barnes Gave a Statement to Investigator Waples

¶41. While trial counsel sought to exclude Barnes' written statement, there is no indication in the record that counsel was unaware that Barnes had given a written statement to Investigator Waples. Instead, the opposite is true. Counsel acknowledged that he was familiar with Investigator Waples' report, which very clearly states that Barnes had given a written statement. Barnes' statement was repeated verbatim in the Waples report that counsel admitted he had reviewed. The fact that he attempted to have the actual handwritten statement excluded does not mean that he was unfamiliar with its contents. The fact that the trial court overruled counsel's objection to the admission of the written statement as a discovery violation does not equate to deficient performance on the part of trial counsel. If we assume, for the sake of argument, that counsel believed the statement itself had not been provided in discovery, counsel's decision not to seek it out could fall well within the ambit of trial strategy. Counsel was familiar with the contents of the statement based upon Investigator Waples' report and, perhaps, from Barnes himself. His argument that it was not

21

provided in discovery gave him cause to move to exclude it at trial. The fact that he failed to have the statement excluded does not amount to deficient performance. This issue is without merit.

**F.** **Failure to Follow the Rules Regarding Alleged Victim's Sexual History, which Resulted in the Exclusion of Testimony from Defense Witnesses**

¶42. Barnes claims that he received ineffective assistance of counsel as a result of defense counsel's failure to comply with Mississippi Rule of Evidence 412. He contends that this failure resulted in the exclusion of testimony from two of his witnesses at trial. Rule 412 prohibits the admission of testimony of a victim's past sexual behavior with certain exceptions. The exceptions include:

(1) specific instances of a victim's past sexual behavior:

(A) with a person other than the defendant, if offered by the defendant to prove that someone else was the source of semen, pregnancy, disease, or injury;

(B) with the defendant, if offered by the defendant to prove consent; and

(C) if constitutionally required to be admitted[.]

MRE 412(b)(1). Rule 412 requires in part that a defendant who intends to offer evidence of a victim's sexual behavior or predisposition to make a motion accompanied by an offer of proof describing the evidence and file the motion at least fifteen days before trial. MRE 412(c)(1). It is undisputed that the prescribed process was not followed in this case. Barnes proffered the testimony of Provine student M.G., "who testified outside of the presence of the jury that D.W. and her boyfriend would engage in inappropriate behavior during class

22

such as her boyfriend touching her breasts." The trial court found that Barnes had not followed the procedure set out by Rule 412. Further, the trial court also found that even if the process had been followed, the proffered testimony did not fall into any of the exceptions listed in Rule 412 and would not have been admissible pursuant to Rule 412. We agree. Accordingly, counsel's failure to comply with the requirements of Rule 412 does not constitute deficient performance in this case. This issue is also without merit.

¶43. We find that the record in this case affirmatively shows that the claims for ineffective assistance of counsel are without merit.

### VIII. Was the evidence insufficient to support the convictions or, in the alternative, were the verdicts against the weight of the evidence?

¶44. Barnes contends that the evidence was legally insufficient to support the verdicts in this case and that the verdicts were against the overwhelming weight of the evidence. Barnes bases his argument in support of these claims upon his contention that the verdicts were "based solely on the testimony of the complaining witness with no evidence, direct or circumstantial, to corroborate it." We address his claims separately below.

### A. Sufficiency of the Evidence

¶45. "This Court reviews de novo a trial court's ruling on the legal sufficiency of the evidence." *Johnson v. State*, 329 So. 3d 1219, 1223 (¶14) (Miss. Ct. App. 2021). In *Jones v. State*, 326 So. 3d 521, 529 (¶45) (Miss. Ct. App. 2021), this Court stated as follows:

> In evaluating the legal sufficiency of the evidence, "[t]he critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Guss v. State*, 296 So. 3d 734, 737 (¶10) (Miss. Ct. App. 2020). "Under this inquiry, all evidence supporting the

23

guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Galloway v. State*, 122 So. 3d 614, 665 (¶168) (Miss. 2013). "[I]f any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand." *Smith v. State*, 250 So. 3d 421, 424 (¶12) (Miss. 2018).

Barnes was found guilty, in each count, of the lesser offense of fondling pursuant to Mississippi Code Annotated section 97-5-23. This statute states in part:

> (2) Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony. . . . A person in a position of trust or authority over a child includes without limitation a child's teacher . . . .

Miss. Code Ann. § 97-5-23(2). As noted above, D.W. testified that on two occasions, prior to her eighteenth birthday, she had sexual contact with Barnes, a teacher at the school where she was a student. In August 2020, she performed oral sex on Barnes, at his request. In September 2020, Barnes put his hand in her pants and touched her vagina. The State also introduced the audio recordings described above, as well as Barnes' written statement. Both of these pieces of evidence corroborate, to some degree, the improper relationship between D.W. and Barnes. In any event, in discussing a victim's testimony in *Colton v. State*, 801 So. 2d 778, 781-82 (¶12) (Miss. Ct. App. 2001), the Court said:

> The fact of the matter is that the victim's testimony alone is enough to convict Colton. *Cross* [*v. State*], 759 So. 2d [354,] 356 [(Miss. 1999)]; *Barker v. State*, 463 So. 2d 1080, 1082 (Miss. 1985). In *Barker*, the court ruled that "[a]lthough the uncorroborated testimony of the prosecutrix in a rape case should be examined closely, it is well-established law that such uncorroborated

testimony is sufficient to sustain a rape conviction." *Barker*, 463 So. 2d at 1082.

When viewing the evidence in the light most favorable to the State, we find that the evidence was legally sufficient to support the verdicts.

### B. Weight of the Evidence

¶46. In reviewing a claim that challenges the weight of the evidence, this Court's standard of review is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court will only disturb a verdict which is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Reversal is only proper when this Court is convinced that the circuit court has abused its discretion in failing to grant a new trial. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.

*Winding v. State*, 908 So. 2d 163, 167 (¶18) (Miss. Ct. App. 2005). Further, "it is well established in Mississippi law that the jury acts as fact-finder and must determine the credibility of the witnesses, and the proper weight to be assigned to their testimony." *Id*. at 168 (¶20).

¶47. In the case at hand, the jury heard testimony from investigators and school administrators who responded to D.W.'s report of the sexual encounters. The jury further heard testimony from D.W. regarding the events and the recordings that she took in the days leading up to her reporting the events. Barnes did not testify at trial; however, his written statement was introduced into evidence at trial. Notably, there were conflicting statements given by Barnes when responding to Investigator Waples' questions during the interview and documented within his report. From the jury's verdicts, it is evident that they gave greater

25

weight and credibility to D.W.'s testimony and the evidence that supported her claims. The jury's verdicts were supported by the evidence and the testimony given at trial.

### IX. Amended Sentencing Order

¶48. As mentioned previously in this opinion, *see supra* note 1, an amended sentencing order was entered on December 11, 2020, in case number 18-0-618-00, which contained an obvious scrivener's error and mistakenly stated that Barnes was found guilty of sexual battery. The record does not reflect that this erroneous amended sentencing order was ever corrected. While Barnes does not raise this issue on appeal, "the court may, at its option, notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). In the case at hand, this Court invokes the plain-error doctrine so that Barnes' sentencing order may be modified to mirror the crime for which he was found guilty. *Bryant v. State*, 844 So. 2d 1153, 1155 (¶5) (Miss. 2003).

### CONCLUSION

¶49. After reviewing the record, we affirm Barnes' convictions and sentences. However, we remand the case to the trial court for the sole purpose of correcting the sentencing order in case number 18-0-618-00, which was signed on December 8, 2020, and entered on December 11, 2020, to reflect that Barnes was found guilty of fondling, not sexual battery.

¶50. **AFFIRMED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**